**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 6/19/96**

**TENTH CIRCUIT**

---

ROSS FULLER, Trustee of the
International Association of Entrepreneurs
of America Benefit Trust,

     Plaintiff - Appellant,

  and

GREAT OAKS MANAGEMENT, a
Colorado corporation,

     Plaintiff,

v.

GALE NORTON, Attorney General of the
State of Colorado; JOHN EHNES,
Commissioner, Colorado Division of
Insurance, individually and in their
professional capacities,

     Defendants - Appellees.

No. 95-1163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-C-1742)**

---

Joseph A. Jordano of FITZGERALD, SCHORR, BARMETTLER & BRENNAN, P.C.,
Omaha, Nebraska (C. Scott Crabtree of ALEXANDER LAW FIRM, P.C., Denver,
Colorado, with him on the briefs), for Plaintiff - Appellant.

Robert M. Howard, Senior Assistant Attorney General (Gale A. Norton, Attorney

General, and Stephen G. Smith, Assistant Attorney General, with him on the briefs), Denver, Colorado, for Defendants - Appellees.

---

Before **BRORBY**, **McWILLIAMS** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Appellant is the trustee of an Employee Retirement Income Security Act of 1974 ("ERISA") plan offering benefits to the employees of its employer members through a multiple employer welfare arrangement ("MEWA"), as defined by section 3 of ERISA. 29 U.S.C. § 1002(3),(40). He claims that because his plan is within the protection of ERISA law, it may not be regulated as an insurance entity by the state of Colorado. Underpinning appellant's prosecution of this case is a belief that ERISA preemption allows a MEWA and its members to avoid state regulation that would apply to insurance companies and employers offering the same benefits. The district court did not find an ERISA-created exception to state regulation and dismissed the complaint. We affirm.

## I.  BACKGROUND

In 1992, a group of employers established a nonprofit organization, the International Association of Entrepreneurs of America ("IAEA"), to create an ERISA welfare benefit plan. The plan offered employees of its members health, disability, occupational illness or accident, and other benefits. To provide benefits, the IAEA

- 2 -

established the International Association of Entrepreneurs of America Benefit Trust

("Benefit Trust") as an unincorporated trust. Plaintiff Ross Fuller is the trustee of the

Benefit Trust. Great Oaks Management is a member of the IAEA and was a plaintiff in

this action, but is not a party to this appeal. The Benefit Trust created an employee

welfare plan established for the purpose of providing welfare benefits to the employees of

its employer members. For purposes of this appeal we look only to allegations in the

complaint, and assume the plan constitutes a MEWA as defined in 29 U.S.C. § 1002(40).[1]

IAEA members may join the plan, which in turn provides employee benefits to plan

participants and their beneficiaries. All benefits from the Benefit Trust plan are

administered as one collective unit, and are funded by employer contributions to the trust.

The trustee, Mr. Fuller, administers the Benefit Trust plan subject to the oversight of a

Benefit Review Committee, elected by the employer members.

The Benefit Trust began soliciting members in Colorado and inquired of the

Colorado Division of Insurance ("Division") how to obtain a certificate of insurance

allowing it to provide health benefits and workmen's compensation benefits. Colorado

prohibits entities from conducting insurance activities without a certificate from the

Division, or providing workmen's compensation benefits without complying with certain

---

[1] Another court has found that this MEWA does not constitute an ERISA plan because employers have a limited relationship with each other and little control over the plan. See International Ass'n. of Entrepreneurs of America Benefit Trust v. Foster, 883 F. Supp. 1050, 1060-61 (E.D. Va. 1995).

insurance requirements.  The Commissioner of the Division notified the Benefit Trust that it was unlawfully providing workmen's compensation and other insurance benefits in contravention of Colorado law.  He ordered the Benefit Trust to cease and desist from these prohibited activities and to submit documents relating to any "unauthorized transaction of insurance."  Rather than complying with the order, the plaintiffs responded by filing this suit.  Plaintiffs requested a declaratory judgment that application of Colorado insurance laws to MEWAs like the IAEA is preempted by federal ERISA regulation, and alleged that Colorado's MEWA regulation violates the Commerce and Equal Protection clauses of the United States Constitution; they also asked the court to enter an injunction to prohibit the Division from interfering with the plan's activities in Colorado.

Defendants filed a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), that was granted as to both defendants.  With respect to defendant Norton, the court found that the Colorado Attorney General has no initial responsibility for enforcing Colorado's insurance or workmen's compensation laws.  Plaintiff does not appeal that dismissal.

The district court also dismissed the suit with respect to the Director of the Division.  The court first found that ERISA explicitly limited preemption of state regulation of MEWAs, and created an exception for state regulation of workmen's compensation coverage; second, it held that Colorado's laws regulating MEWAs and

workmen's compensation fit within the exceptions and are not inconsistent with ERISA regulation; and, finally, it held that Colo. Rev. Stat. § 10-3-903.5(7), which exempts from much state insurance regulation qualified MEWAs that have been operating continuously since 1983, is not inconsistent with ERISA provisions, primarily because this regulation does not prohibit more recent MEWAs from operating in Colorado--it merely subjects them to Colorado's insurance laws. Its order did not address plaintiffs' constitutional challenges. On appeal, Fuller renews each of the issues raised in the complaint.

## II. DISCUSSION

We uphold a dismissal under Fed. R. Civ. P. 12(b)(6) only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995). We review the district court's legal rulings on ERISA preemption de novo. Airparts Co. v. Custom Benefit Servs., Inc., 28 F.3d 1062, 1064 (10th Cir. 1994). Plaintiff's attack on Colorado's ability to regulate benefits offered by the Benefit Trust plan takes three forms. First, he contends that Colorado's workmen's compensation scheme is preempted from interfering with MEWA plans so long as the plans' benefits comply with minimum state requirements. Second, ERISA does not allow the state to regulate MEWAs as insurance, and requirements of Colorado's insurance regulation are inconsistent with ERISA provisions. Third, even if Colorado's MEWA regulatory

scheme does not run afoul of ERISA, the MEWA regulation is unconstitutional as an irrational classification under the Equal Protection Clause of the Fourteenth Amendment, or a violation of reserved congressional power under the dormant Commerce Clause.

**A.      Are Colorado's restrictions on the provision of workmen's compensation benefits preempted by ERISA?**

Colo. Rev. Stat. § 8-44-101 requires employers to provide workmen's compensation benefits through one of a number of mechanisms.  Choices include obtaining insurance through a state fund, insuring through a licensed insurance company, or procuring a self-insurance permit from the director of insurance.  Colo. Rev. Stat. § 8-44-101(a)-(c).  Plaintiff contends that the workmen's compensation laws are inconsistent with ERISA because they do not permit MEWAs to provide benefits that are expressly contemplated by ERISA; for this reason, ERISA preempts application of these requirements to the MEWA under review.

ERISA provides a complex and extensive preemption regime: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a).[2]  A state law "relates

---

[2]    Section 1003(a), referred to in the various clauses of the preemption provision, describes all ERISA benefit plans created or administered by private employers or labor organizations, while § 1003(b) exempts from the operation of ERISA preemption a narrow class of plans.

to" an employee welfare plan if it has "a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). Preemption has been applied very broadly, and prevents states from applying a wide body of law to employee benefit plans, including laws that only indirectly affect ERISA plans. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987) ("[T]he express pre-emption provisions of ERISA are deliberately expansive and designed to establish pension plan regulation as exclusively a federal concern." (quotation omitted)).

Exempted from ERISA preemption are laws regulating some arrangements that constitute employee benefit plans, including plans "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation laws or disability insurance laws." 29 U.S.C. §§ 1003(b)(3), 1144(a). In this case we review the relationship between the broad preemptive language in § 1144(a) and Congress's desire, reflected in § 1003(b), to leave to the states their traditional role in regulating workmen's compensation, disability, and unemployment benefits. We "must presume that Congress does not intend to pre-empt areas of traditional state regulation" when we determine the scope of express ERISA preemption. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985) (citing Jones v. Rath Packing, Co., 430 U.S. 519, 525 (1977)). In Shaw, the Supreme Court held that New York State, through its disability benefits law, could not regulate multibenefit plans offering disability benefits. 463 U.S. at 107-08. While the state cannot regulate the multibenefit plan itself, it may

compel employers to choose to provide disability benefits comporting with state law within a multibenefit plan or to create a separate plan that does comply. Id. at 108. While specifically directed to regulation of disability benefits, Shaw applies with equal force in the case of workmen's compensation benefits. Employee Staffing Servs. v. Aubry, 20 F.3d 1038, 1041 (9th Cir. 1994)

Five circuits, including ours, have expressly held that ERISA does not preempt state laws regulating workmen's compensation, because these laws do not "relate to" benefit plans. Contract Servs. Employee Trust v. Davis, 55 F.3d 533, 536 (10th Cir. 1995); Fuller v. Skornicka, 79 F.3d 685 (7th Cir. 1996); Employers Resource Mgmt. Co. v. James, 62 F.3d 627 (4th Cir. 1995); Combined Mgmt. v. Superintendent of the Bureau of Ins., 22 F.3d 1 (1st Cir.), cert. denied, 115 S. Ct. 350 (1994); Aubry, 20 F.3d at 1041. While Contract Services did not specifically hold that a state has plenary authority to regulate workmen's compensation benefits offered under the MEWA umbrella, we followed the analysis of the First and Ninth Circuits to hold that merely because state regulation might have an economic impact on a multibenefit ERISA plan it does not automatically "relate to" an ERISA plan. Contract Servs., 55 F.3d at 535-36. Moreover, two of the cases from other circuits involved employers who procured workmen's compensation coverage through the IAEA. See Fuller, 79 F.3d at 686; Combined Mgmt., 22 F.3d at 2. All five of these cases conclude that a multibenefit plan could not take advantage of ERISA preemption to avoid state laws that would apply if the plan provided

- 8 -

only workmen's compensation benefits (see 29 U.S.C. § 1003(b)(3)), by placing these benefits into a multibenefit plan. See, e.g., Contract Servs., 55 F.3d at 536. Our reasoning in Contract Services applies with even greater force to multibenefit plans provided by MEWAs, because Congress, in §1144(b)(6)(A), has already indicated a weaker preemption interest, and a correspondingly stronger state regulation interest, in such arrangements. See infra part B.1.

Plaintiff contends that these circuit cases misinterpret the exception to ERISA application found in § 1003(b)(3) and the limited holding of Shaw. According to plaintiff, Shaw stands for the proposition that §1003(b)(3) allows state law application only to the portions of plans providing workmen's compensation (or in Shaw, disability) benefits that are inferior to state-mandated benefits. He alleges that the Benefit Trust plan benefits meet the requirements of the Colorado scheme. Plaintiff misreads Shaw. There, the Supreme Court expressly allowed New York to impose requirements on disability benefits, whether or not the benefits were offered within multibenefit plans. 463 U.S. at 108. Laws insuring that benefits will be paid certainly must be considered "requirements" of state workmen's compensation law with which plan benefits must comply. See id. Thus, consistent with our earlier ruling in Contract Services, we conclude that Colorado's workmen's compensation laws, including § 8-44-101, are not preempted by ERISA as applied to MEWAs. The district court properly dismissed this claim.

## B. Preemption of Colorado's MEWA Regulation

Plaintiff challenges Colorado's authority to apply its insurance laws to the Benefit Trust plan by subjecting it to the jurisdiction of the Division. The relevant statute of which plaintiff complains, Colo. Rev. Stat. § 10-3-903.5, reads:

> **Jurisdiction over providers of health care benefits.** (1) Notwithstanding any other provision of law, and except as provided in this section, any person or other entity which provides coverage in this state for medical, surgical, chiropractic, . . . dental, hospital, or optometric expenses, whether such coverage is by direct payment, reimbursement, or otherwise, shall be presumed to be subject to the jurisdiction of the division of insurance . . . . (2) . . . Nothing in this section shall be construed to in any way limit the ability of the division of insurance to regulate insurance companies, multiple employer trusts, multiple employer welfare arrangements, association health plans, or preferred provider organizations.

An entity falling within § 10-3-903.5 is subject to examination by the Division, and to "all appropriate provisions [of Colorado insurance regulation] regarding the conduct of its business." Colo. Rev. Stat. § 10-3-903.5(3),(4).

Colorado has chosen to exempt certain qualifying MEWAs from direct regulation by the Division. "The provisions of this section and any other laws of this state that regulate insurance or insurance companies shall not apply to . . . any multiple employer welfare arrangement which meets the requirements of paragraph (c)." Colo. Rev. Stat. § 10-3-903.5(7)(a). In order to qualify for the exemption from insurance laws a MEWA must have been in existence since January 1, 1983, must comply with disclosure, reporting, and funding requirements, and must be sponsored by an association that fulfills certain membership and activity requirements. Colo. Rev. Stat. § 10-3-903.5(7)(c).

- 10 -

Plaintiff admits the Benefit Trust plan is ineligible for the exemption described in § 10-3-903.5(7)(c), but asserts that ERISA preempts Colorado's attempt to regulate the Benefit Trust through the Division.

By directly regulating MEWAs, Colo. Rev. Stat. § 10-3-903.5 clearly "relates to" an employee benefit plan within the meaning of the ERISA preemption clause. 29 U.S.C. § 1144(a). This, however, only begins our inquiry. ERISA preemption, while broad, is not absolute. Congress specifically excepted state laws regulating insurance. This provision, commonly referred to as the "savings clause," states: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The state power allowed by the savings clause is in turn limited by the next subparagraph, known as the "deemer clause":

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, <u>shall be deemed to be an insurance company . . . or to be engaged in the business of insurance</u> . . . for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B) (emphasis added). The combined effect of the savings and deemer clauses is to allow state insurance regulation of general application, while forbidding a state from applying such regulation to ERISA plans directly. <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 61 (1990).

Finally, and most relevant to this discussion, ERISA allows state regulation of MEWAs in specific situations, such as the one before us, by removing federal restriction. The pertinent provision, applicable to MEWAs (which by definition provide welfare, not pension, benefits), states:

> (6)(A)  Notwithstanding any other provision of this section--
> (i) in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides--
> (I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and
> (II) provisions to enforce such standards, and
>
> (ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

29 U.S.C. § 1144(b)(6)(A) (the "MEWA clause").  Because plaintiff admits that the Benefit Trust plan is not "fully insured" as defined by ERISA, the  extent of preemption applied to Colorado's laws is determined by § 1144(b)(6)(A)(ii).

Plaintiff raises three arguments why Colorado's MEWA regulation is not protected from ERISA preemption by 29 U.S.C. § 1144(b)(6)(A)(ii): first, the deemer clause forbids Colorado from "deeming" the Benefit Trust to be insurance for the purpose of subjecting it to regulation by the Division, regardless of the MEWA clause; second, the

MEWA clause does not exempt Colo. Rev. Stat. § 10-3-903.5 from preemption because it is not a "law of any State which regulates insurance"; third, even if § 10-3-903.5 is a law which regulates insurance, Colorado's insurance scheme would subject the Benefit Trust to laws "inconsistent" with ERISA.

## 1. Does Colorado Impermissibly "Deem" MEWAs to be Insurance?

While admitting that the MEWA clause allows states to apply insurance laws to MEWAs, plaintiff nevertheless contends that states may not effectuate this regulation by merely "deeming" MEWAs to be insurance arrangements. He argues that enactment of the MEWA clause does not affect the operation of the deemer clause. At the outset, we assume for purposes of this argument that by presumptively subjecting MEWAs to be subject to the jurisdiction of the Division, Colo. Rev. Stat. § 10-3-903.5 "deems" MEWAs to "be engaged in the business of insurance." Our task, then, is to determine the effect of the MEWA clause on the deemer clause.

In FMC Corp. v. Holliday, 498 U.S. 52 (1990), the Supreme Court held that the deemer clause exempts self funded ERISA plans from state regulation "insofar as that regulation 'relates to' the plans." Id. at 61. On the other hand, state insurance laws indirectly may regulate plans that are not self funded, because insured plans are bound by state regulation insofar as the regulations apply to their insurers. Id. The Court drew this distinction from Congress's interest in creating national rules governing pension plans and in avoiding "'endless litigation over the validity of State action.'" Id. at 64-65

(quoting 120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits)).[3]

The MEWA provision was added in a 1983 amendment to ERISA. Pub. L. No. 97-473 (97th Cong., 2nd Sess.) (1983). The impetus behind the amendment was an interest in curbing abuses by multiple employer trusts, which would claim ERISA preemption when states attempted to regulate them as quasi-insurance companies. 129 Cong. Rec. 30356 (1982) (statement of Rep. Erlenborn). After thwarting state regulation, some of these uninsured trusts declared bankruptcy, leaving employees responsible for millions of dollars in unpaid hospital and medical bills. Id.; 129 Cong. Rec. 30355 (statement of Rep. Rostenkowski). The purpose of the amendment was to make clear the extent to which state law is preempted with respect to employee benefit plans that are also MEWAs. Id. at 30357. The result, as the Conference Report notes, is that "[i]n the case of a multiple employer welfare arrangement that is not fully insured, the provision exempts from ERISA preemption any state laws that regulate insurance. Notwithstanding this provision, the Secretary is authorized to determine the extent to which the ERISA preemption provision will be applied to a [MEWA] that is not fully insured." H.R. Rep.

---

[3] Until FMC, the scope of the deemer clause had been unclear. The provision was interpreted by lower courts either to preempt only state regulation that, as a pretext for regulating ERISA plans, purported to regulate the business of insurance, or, more broadly, to any state insurance law that would apply to a self insured plan. Compare, e.g., Northern Group Servs., Inc. v. Auto Owners Ins. Co., 833 F.2d 85, 93 (6th Cir. 1987), cert. denied, 486 U.S. 1017 (1988) with Mullenix v. Aetna Life and Cas. Ins. Co., 912 F.2d 1406 (11th Cir. 1990). FMC settled the question by adopting the latter interpretation.

- 14 -

97-984, at 19, reprinted in, 1982 U.S.C.C.A.N. at 4604.

The Second Circuit has held that the MEWA clause "authorizes states to regulate MEWAs as insurance companies." Atlantic Healthcare Benefits Trust v. Googins, 2 F.3d 1, 5 (2d Cir. 1993), cert. denied, 114 S. Ct. 689 (1994). Based on both the language and structure of § 1144 and on the legislative history of the MEWA amendment, we agree. The savings clause limits preemption of state insurance law to the extent it could be read to "exempt or relieve any person from [state insurance law]." 29 U.S.C. § 1144(b)(2)(A) (emphasis added). The deemer clause, in turn, qualifies the savings clause and insures that states will not treat ERISA plans as "persons" subject to state laws enumerated in the savings clause. Finally, the MEWA clause is a limited exception to the deemer clause, and allows states to regulate MEWA-sponsored plans as if they were engaged in the business of insurance.

In this fashion Congress satisfied its goal of reserving to the states regulation of the business of insurance and protecting ERISA plans themselves from being subjected to state and local regulation. See FMC Corp.. 498 U.S. at 61-65. This interest in protecting plans from preemption is notably absent in the MEWA clause, which specifically authorizes state regulation of MEWAs as insurance providers, even if the MEWA is an employee benefit plan. 29 U.S.C. § 1144(b)(6)(A). Congress obviously viewed self funded arrangements by multiple employers to be different, and less deserving of federal preemption from state insurance regulators, than self funded plans by single employers.

See Googins, 2 F.3d at 5.  Finally, if MEWAs that are not fully insured cannot be deemed to be insurance companies for the purpose of state insurance regulations, it is difficult to understand exactly what the MEWA clause adds to the existing ERISA preemption arrangement.  We avoid interpreting statutes in a manner that makes any part superfluous. See United States v. Nordic Village, Inc., 503 U.S. 30, 36 (1992).

### 2.  Does Colo. Rev. Stat. § 10-3-903.5 Regulate Insurance?

For MEWAs that are not fully insured, as defined in ERISA, the state may apply any "law of any State which regulates insurance . . . not inconsistent [with ERISA]."  29 U.S.C. § 1144(b)(6)(ii) (emphasis added).  Plaintiff asserts that Colo. Rev. Stat. § 10-3-903.5, which subjects MEWAs to the jurisdiction of the Division, is not a law which "regulates insurance."  The term "law of any state which regulates insurance" has been read in the context of the ERISA savings clause to be coextensive with the term as defined by the McCarron-Ferguson Act, which cedes to the states extensive authority to regulate the "business of insurance."  Pilot Life, 481 U.S. 48.  We see no reason to believe Congress intended the term to be used differently in the context of the MEWA clause.  See Gustafson v. Alloyd Co., 115 S. Ct. 1061, 1067 (1995) (the normal rule of statutory construction is that identical terms used in different parts of the same act are intended to have the same meaning).

In Pilot Life, the Supreme Court developed a test, derived from Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724 (1985), to determine whether a challenged

state law regulates insurance for the purpose of ERISA preemption. Pilot Life, 481 U.S. at 48. The court must first look to the "common-sense view" of whether the law is meant to regulate insurance for the purposes of the ERISA preemption regime. Id. It then tests this determination by reference to three criteria: "First, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Id. at 48-49 (quotation omitted).

Colorado enacted Colo. Rev. Stat. § 10-3-903.5 to address what it perceived as an insurance problem; specifically, the state believed that MEWA-type vehicles were attempting to provide insurance services, and wanted to regulate these entities through its insurance laws. Colorado's approach is consistent with the intent of the MEWA clause. The MEWA amendment's sponsor in the House of Representatives viewed uninsured MEWAs as thinly disguised insurance arrangements that properly should be regulated at the state level. 129 Cong. Rec. 30356 (statement of Rep. Erlenborn). By subjecting MEWAs to the jurisdiction of the Division, Colo. Rev. Stat. § 10-3-903.5 establishes the equivalent of a licensing requirement. As another court has noted, licensing is integral to regulating the insurance relationship; the licensure process precedes effective insurance regulation. Foster, 883 F. Supp. at 1064. The Department of Labor, in an advisory opinion to a state insurance regulator, agrees. See Dep't of Lab. Advisory Op. 90-18A

(July 2, 1990).  Plaintiff does not point to any specific part of Colorado's insurance code--to which the Benefit Trust plan would be subjected by § 10-3-903.5--that does not regulate the business of insurance as contemplated by the  McCarron-Ferguson Act.  As we have decided that a state may deem a MEWA to be subject to regulation as insurance, the entire regulatory regime falls well within the Pilot Life test.  We decline plaintiff's invitation to engage in a semantic absurdity by deciding that a law bringing an entity under the umbrella of state insurance regulation is not itself a law regulating the "business of insurance."

### 3.  Are Colorado's MEWA regulations "inconsistent" with ERISA requirements because they require MEWA plans to comply with laws designed for insurance companies?

The MEWA clause does not allow all state insurance regulations to apply to MEWAs that are not fully insured.  It permits only regulation that is "not inconsistent with [ERISA provisions]."  Plaintiff argues that Colorado laws intended for regulation of insurance companies are inconsistent with ERISA.  He contends that by forcing MEWAs to adopt the structure of insurance entities, the Colorado regulations do not allow MEWAs to provide benefits as MEWAs, as expressly permitted by ERISA.  More specifically, by being forced to become an insurance-type entity, the IAEA would be forced to engage in a prohibited transaction as defined by § 406(a) of ERISA, 29 U.S.C. § 1106(a).[4]  Thus, plaintiff argues, the MEWA clause does not shield Colo. Rev. Stat. § 10-

---

[4]  Section 406(a) provides:  "Except as provided in section 1108 of this title: (1) A
(continued...)

3-903.5 from ERISA preemption.

Where state regulation is not entirely excluded by a federal framework, state regulation is not "inconsistent" unless there is an actual conflict between federal and state requirements.  See Fidelity Federal Sav. v. De La Cuesta, 458 U.S. 141, 153 (1982) (applying "inconsistency" test to different federal preemption issue).  An "actual conflict" is said to arise only when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Id.  A Department of Labor advisory opinion is insightful; it concludes that a state insurance scheme effectively prohibiting a MEWA from obtaining a certificate of authority to operate in the state would be "inconsistent with" ERISA.  Dep't of Lab. Advisory Op. 90-18A (July 2, 1990).  On the other hand, "it is the view of the Department that it would be contrary to congressional intent to conclude that states, while having the authority to apply insurance laws to such plans, do not have the authority to require and enforce registration, licensing, reporting and similar requirements necessary to establish and monitor compliance with

---

[4](...continued)
fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect-- (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1)(D).  A "party in interest" includes "an employer any of whose employees are covered under the plan."  29 U.S.C. § 1002(14)(c).

those laws." Id.[5]

Plaintiff appears to argue that through merely subjecting MEWAs to regulation by the Division, § 10-3-903.5 is inconsistent with ERISA because Colorado might require it to engage in practices prohibited by ERISA or, conversely, prohibit practices specifically allowed by ERISA.[6] He does not present facts, however, that suggest the Benefit Trust will be required to become an insurance entity in contravention of ERISA, that it is being subjected to laws with which it cannot comply, or that it will be unable to get a certificate of compliance from the Division.[7] Under Fed. R.Civ. P. 12(b)(6), we evaluate all well

---

[5] Although a Department of Labor advisory opinion is binding only on the parties to whom it is addressed and has no precedential effect, see ERISA Proc. 76-1, § 10, the opinion of an agency charged with administering a statute can, in appropriate circumstances, provide guidance to a court. Federal Elec. Comm'n v. Colorado Republican Party Fed. Campaign Comm'n., 59 F.3d 1015, 1021 (10th Cir. 1995), cert. granted, 116 S. Ct. 689 (Jan. 6, 1996); see also Wisconsin Educ. Assn. Ins. Trust v. Iowa State Board of Public Instruction, 804 F.2d 1059, 1065 (8th Cir. 1986) ("situations exist where it is prudent to consult the expert opinion of the Department of Labor in construing the statutory meaning of an [ERISA term]"). In this case, the Department's advisory opinion is valuable both because the circumstances in this case almost mirror those described in the advisory opinion, and because of the important role the Department of Labor has in granting exemptions from state regulation to MEWAs that are not fully insured. See 29 U.S.C. § 1144(b)(6)(B).

[6] Plaintiff presents a strained argument that because Colorado law prohibits that which ERISA permits, the laws are inconsistent. ERISA contemplates such an approach by the state. For example, 29 U.S.C. § 1144(b)(6)(A) specifically allows state regulation of even fully insured MEWAs in a manner more strict than ERISA would require. Under ERISA, welfare benefit plans are not subject to funding requirements, but under § 1144(b)(6)(A)(i)(I) states may require "maintenance of specified levels of reserves and specified levels of contributions."

[7] Nothing in the record suggests that the Benefit Trust will be unable to procure a
(continued...)

pleaded facts--not conclusory allegations. Jojola v. Chavez, 55 F.3d 488, 494 n.8 (10th

Cir. 1995). Without pointing to specific conflicting regulations, plaintiff is reduced to

asserting, without factual support, that ERISA and the Colorado insurance code are in

conflict. Absent these conclusory allegations, it appears that plaintiff's argument rests on

the proposition that it is unlawful to deem a MEWA to be engaged in the business of

insurance. We disagree. As discussed above, the MEWA clause contemplates states

deeming MEWAs to be engaged in the business of insurance.[8]

Plaintiff's suggestion that by requiring MEWAs to form or buy a wholly-owned

insurance company, Colorado may force the plan to engage in a transaction prohibited by

ERISA, see 29 U.S.C. § 1106(a), again asks us to speculate beyond the complaint.

Colorado's licensing scheme, which merely requires MEWAs to be subject to the

jurisdiction of the division of insurance, cannot be read to include a requirement that a

MEWA become an entity repugnant to ERISA.[9] We are unwilling to preempt Colo. Rev.

---

[7](...continued)
certificate; the cease and desist order merely characterizes the plan's activities as the "unauthorized transaction of insurance."

[8]     Plaintiff does suggest that by exempting MEWAs in existence since 1983, § 10-3-903.5(7), Colorado effectively outlaws more recent MEWAs from operating in the state. A plain reading of § 10-3-903.5 does not support this proposition. The exemption for MEWAs that have operated since 1983 does not prohibit more recent MEWAs from operating in Colorado, it merely requires them to be subject to the jurisdiction and examination powers of the Division.

[9]     In any event, it is unclear to us why ERISA would prevent the Benefit Trust, which is an independent trust, from being required to become an insurance entity. See 29
(continued...)

Stat. § 10-3-903.5 based on speculation that at some future point the Division may attempt to impose state requirements putting the Benefit Trust in violation of ERISA.

**C. Does Colo. Rev. Stat. § 10-3-903.5 Create an Irrational Classification?**

Plaintiff argues that Colorado's MEWA regulatory regime creates an irrational classification, thus violating the Equal Protection Clause. See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (under rational basis review, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest"). Specifically, he complains that MEWAs established after 1982 are prohibited from providing benefits as MEWAs, but must become insurance-type entities. See Colo. Rev. Stat. §10-3-903.5(7)(c)(I). Defendants defend the classification, arguing that MEWAs established after 1982 can provide benefits in Colorado, but must submit to the panoply of insurance regulation. MEWAs established before 1983 are exempted from insurance regulation because the MEWA clause amending ERISA was added in 1983. Pub. L. No. 94-473, § 302(b) (96 Stat. 2613) (1983). The state therefore justifies the classification as a grandfathering provision established to protect the reasonable expectations of plans created before states' rights were clarified with respect to MEWAs.

We do not reach the substance of plaintiff's equal protection challenge because he lacks Article III standing to raise it. The "constitutional minimum of standing," in

---

[9](...continued)
U.S.C. § 1104(a)(1)(A)(ii) (fiduciary may use assets of plan to defray the reasonable expenses of administering the plan); Googins, 2 F.3d at 6 (MEWA plan's funds may be used to comply with state regulatory expenses).

addition to requiring the plaintiff to allege an actual or imminent invasion of a legally protectable interest "fairly traceable" to the challenged action, requires a showing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 41-43 (1976)). Based on the complaint, it is clear that any claimed equal protection injury to the Benefit Trust plan cannot be "redressed by a favorable decision."

Subsection (7)(c)(V)(C) of the Colorado statute requires MEWAs exempt from direct insurance regulation, in addition to having been in existence since 1982, to "be sponsored and maintained by an association which . . . . [h]as been in existence for a period of at least ten years." Colo. Rev. Stat. § 10-3-903.5(7)(c)(V)(C). Plaintiff admits the IAEA was formed in 1992, but does not challenge the ten year requirement. Even if we were to strike the challenged provision, the Benefit Trust plan still would not fulfill the remaining requirements of the Colorado statute, and could not benefit from our decision.[10] We thus dismiss this claim for lack of jurisdiction. See Clajon Prod. Corp. v.

---

[10] Northeastern Florida Contractors v. Jacksonville, 113 S. Ct. 2297 (1993) does not suggest a different result. In that case, the Court held that a plaintiff challenging under the Equal Protection Clause a legal barrier to compete for a government contract, need not show that in the absence of the challenged provision he would have been awarded the contract, only that he would have qualified for the opportunity to bid for it. 113 S. Ct. at 2303. Here, even if we struck down the requirement that the Benefit Trust have existed since 1983, the plan still would not have the opportunity to qualify for the Colorado exemption for pre-1983 MEWAs because its sponsoring association is, by plaintiff's own account, less than ten years old.

<u>Petera</u>, 70 F.3d 1566, 1574 (10th Cir. 1995).

**D.      Does Colorado's law requiring MEWAs to comply with the state's insurance regulations violate the Commerce Clause?**

Plaintiff asserts that Colorado's workmen's compensation laws and insurance laws, as applied to prohibit MEWAs from doing business in Colorado, violate the dormant Commerce Clause because they act to keep multistate MEWAs out of Colorado. The Commerce Clause provides that "Congress shall have Power . . . to regulate Commerce . . . among the several States. U.S. Const., Art. I, § 8, cl. 3. Even absent congressional action, the courts may decide that state regulations challenged under the Commerce Clause impermissibly burden interstate commerce. <u>See</u>, <u>e.g.</u>, <u>Philadelphia v. New Jersey</u>, 437 U.S. 617 (1978). The Supreme Court has specifically held that Congress removed all Commerce Clause limitations on state regulation of "the business of insurance" by passing the McCarran-Ferguson Act. <u>Western and Southern Life Ins. Co. v. State Bd. of Equalization</u>, 451 U.S. 648, 653 (1981). Plaintiff's only response is to argue, without authority, that ERISA preemption somehow has carved out a new area for the dormant Commerce Clause to work. In light of the Supreme Court cases that specifically look to the McCarron-Ferguson Act in interpreting the scope of ERISA preemption, <u>see</u>, <u>e.g.</u>, <u>Pilot Life</u>, 481 U.S. at 48-49, it is implausible to suggest that Congress silently intended to deny states power to effectuate their insurance laws, while expressly allowing such regulation in the ERISA scheme. Because Colo. Rev. Stat. § 10-3-903.5 regulates the

"business of insurance" within the meaning of the McCarron-Ferguson Act, it falls outside the sphere of exclusive federal regulation reserved by Congress.

## CONCLUSION

When Congress amended ERISA to include provisions allowing for state MEWA regulation, it envisioned that states would regulate these arrangements as insurance. Plaintiff complains because Colorado has done just that. The district court properly dismissed the complaint, and its judgment is AFFIRMED.