**Charles T. HOOG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00239–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 28, 2002.

---

From the County Court, Frio County, Texas, Trial Court No. 2421; David Peeples, Judge Presiding.[1]

Roberto Maldonado, Law Office of Roberto Maldonado, San Antonio, for appellant.

Grady L. Roberts, Jr., Law Office of Grady L. Roberts, Jr., Hector M. Lozano, County Attorney, Pearsall, for appellee.

Sitting: ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

The State of Texas seized seventy-three head of cattle under chapter 821 of the Texas Health and Safety Code, alleging that Charles T. Hoog had cruelly treated the cattle. The county court found that Hoog had cruelly treated the cattle and ordered their sale at auction. Hoog appeals. We vacate the judgment of the trial court and dismiss the cause.

### BACKGROUND

The State seized seventy-three head of cattle, alleging in the warrant that Charles Hoog, their owner, had cruelly treated the animals. The cattle were placed in a feedlot. Castroville State Bank filed an answer, alleging that the cattle were owned by Thomas Hoog, Charles's father, and that the bank possessed the first lien on the cattle. On June 9, 2000, a justice of the peace held a hearing at which Charles Hoog appeared pro se. The court found that both Charles and Thomas Hoog had cruelly treated farm livestock under section 821.021 and 821.023 of Texas Health and Safety Code. The justice court ordered both Charles and Thomas Hoog to be divested of ownership and ordered a public

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

sale of the cattle.[2] Charles Hoog appealed the justice court's decision to the county court.

In the county court, Frio County[3] filed an application to sell the cattle at public auction. On December 28, 2000 and January 2, 2001, the county court held a hearing at which Charles Hoog, again, appeared pro se. On January 2nd, the county court approved the stipulation between *"parties, Frio County and Charles T. Hoog,"* and *"non-parties, Castroville State Bank and Thomas V. Hoog "* that Thomas Hoog had legal title to the cattle. The county court then found that Charles Hoog had cruelly treated the cattle and ordered the cattle to be sold at public auction on January 10, 2001. On January 10th, Hoog filed an application for temporary restraining order, temporary injunction, and permanent injunction. The county court denied his application, and the cattle were sold at auction for a total of $67,900.22. On February 28, 2001, the county court entered a final judgment. The judgment ordered expenses from the sale and from the feeding and maintaining of the cattle be deducted from the sale's proceeds. After expenses, the county court ordered $15,820.82 to be paid to Thomas V. Hoog and Castroville State Bank.

## MOTION TO DISMISS

■ Frio County argues that we do not have jurisdiction over this appeal pursuant to *Costello v. State,* 774 S.W.2d 722 (Tex. App.-Corpus Christi 1989, writ denied). In *Costello,* the court of appeals decided whether it had jurisdiction after the *res* in

dispute had been sold, retitled, or was no longer within the appellate court's control. *Id.* at 723. The court noted that "there are several federal decisions dealing with an appellate court's jurisdiction in an *in rem* proceeding after the *res* has been sold or dispersed" and that those cases required the claimant to "obtain a stay of execution of the trial court's judgment to prevent removal of the *res* from the control of the court and to preserve jurisdiction for appeal." *Id.* at 723–24. "Otherwise, the release or removal of the *res* from the control of the court will terminate jurisdiction, unless the *res* is released accidently, fraudulently, or improperly." *Id.* at 724 (citing *United States v. $79, 000,* 801 F.2d 738, 739 (5th Cir.1986)).

Since *Costello,* however, the Supreme Court has held that an appellate court may still have jurisdiction despite the *res* having been sold, retitled, or no longer being within the appellate court's control. In *Republic National Bank v. United States,* 506 U.S. 80, 82, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Blackmun, J.),[4] the government seized a house that had been purchased with the proceeds of narcotics trafficking. After a trial on the merits, the district court ordered the proceeds of the sale of the house forfeited to the government, which deposited the funds in the U.S. Treasury. *Id.* at 83, 113 S.Ct. 554. Republic National Bank claimed a lien on the funds and appealed. *Id.* The appellate court dismissed the appeal for lack of jurisdiction, noting that the transfer of the res destroyed jurisdiction. *Id.*

---

**2.** The justice court divested Thomas Hoog of ownership despite the warrant of seizure naming only Charles Hoog as the owner of the cattle.

**3.** Prosecuting the forfeiture action on behalf of the State of Texas.

**4.** Justice Blackmun was joined by a majority of the Court with respect to Parts I, II, and IV of his opinion.

The Supreme Court reversed, holding that "in an in rem forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." *Id.* at 88–89, 113 S.Ct. 554. The Court rejected the government's argument that the transfer of the sale proceeds from the district court to the U.S. Treasury destroyed jurisdiction, because the appellate court no longer had control over the *res:*

> The rule invoked by the Government thus does not exist, and we see no reason why it should. The fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a prevailing party with a means of defeating its adversary's claim for redress. Of course, if a "defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect," a court might determine that a judgment would be "useless." So, too, if a plaintiff abandons a seizure, a court will not proceed to adjudicate the case. These exceptions, however, are closely related to the traditional, theoretical concerns of jurisdiction: enforceability of judgments and fairness of notice to parties. Neither interest depends absolutely upon the continuous presence of the res in the district.

*Id.* at 87, 113 S.Ct. 554 (citations omitted). The useless judgment exception did not apply in *Republic National,* because "the government had possession of the specific 'substitute res'—the sale proceeds—and an appropriations statute 'authoriz[ed] the payment of funds in the event petitioner were to prevail in the underlying forfeiture action.' " *Newpark Shipbuilding & Re-pair, Inc. v. M/V Trinton Brute,* 2 F.3d 572, 573 (5th Cir.1993) (quoting *Republic National,* 506 U.S. at 96, 113 S.Ct. 554 (Rehnquist, C.J.)).[5]

Since *Republic National,* the Fifth Circuit decided a similar issue in *Newpark Shipbuilding & Repair, Inc. v. M/V Trinton Brute,* 2 F.3d 572, 573 (5th Cir.1993). Newpark brought an in rem action against a vessel owned by McKinney, seeking to recover for past-due repairs it had performed on the vessel. The district court entered judgment in favor of Newpark and ordered the vessel sold at a marshal's sale. *Id.* Newpark was the successful bidder at the sale and substituted its judgment in lieu of payment for the vessel. *Id.* McKinney appealed. *Id.* Newpark moved to dismiss the appeal for lack of jurisdiction. The Fifth Circuit distinguished *Newpark* from *Republic National* and dismissed the appeal, noting that the appeal fell within the "useless" judgment exception:

> In this case, by contrast, there never was a substitute res. Newpark used its judgment to purchase the [vessel]; no money changed hands as a result of the marshal's sale. Moreover, the vessel is no longer the res; a marshal's sale discharges all liens against the ship and grants the purchaser title free and clear of liens. Unlike the situation in *Republic,* we cannot trace the res or its proceeds to a particular fund in Newpark's possession.

*Id.* at 573 (citations omitted).

Here, however, we do have a "substitute res," the proceeds of the auction. Therefore, under *Republic's* analysis, we have jurisdiction over this appeal despite the sale of the cattle. We deny Frio County's motion to dismiss.

---

**5.** Chief Justice Rehnquist's concurred and dissented with Justice Blackmun's opinion, noting that he disagreed with Justice Blackmun's Appropriations Clause analysis. Chief Justice Rehnquist's analysis was joined by Justices White, Scalia, Kennedy, Souter, and Thomas. His Appropriations Clause analysis, thus, represents the majority of the Court.

SALE OF CATTLE

■ In his first issue, Hoog argues that section 821.025(b) of the Texas Health and Safety Code prohibited the trial court from ordering the sale of the cattle during his appeal to this court. Section 821.025(b) provides that "[w]hile an appeal under this section is pending, the animal may not be sold, destroyed, or given away as provided by Sections 821.022–821.024." TEX. HEALTH & SAFETY CODE ANN. § 821.025 (Vernon 1992). In its conclusions of law, the county court held that

> section 821.025 of the Texas Health and Safety Code prohibits the sale of the cattle during the time this case is on appeal from the Justice Court to the County Court but does not prevent the sale if the case is appealed from the County Court to the Court of Appeals or the Supreme Court of Texas.

We agree.

■ The goal of statutory construction is to give effect to legislative intent. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002); *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex.2000). Unless a statute is ambiguous, we discern that intent from the language of the statute itself. *Downs*, 81 S.W.3d at 805. Further, we consider a statute as a whole, not its provisions in isolation. *Id.; Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001). Section 821.022 allows an officer who has reason to believe that an animal has been or is being cruelly treated to apply to a justice court in the county or to a municipal court in the municipality in which the animal is located for a warrant to seize the animal. TEX. HEALTH & SAFETY CODE ANN. § 821.022(a) (Vernon 1992). On a showing of probable cause to believe that the animal has been or is being cruelly treated, the justice or municipal court shall issue the warrant and set a time within ten days from the date of issuance for a hearing in the court to determine whether the animal has been cruelly treated. *Id.* § 821.022(b). Section 821.023 describes what actions the court may take after this hearing:

> (e) If the court finds that the animal's owner has cruelly treated the animal and that the animal is farm livestock, the owner shall be divested of ownership and the court shall order a public sale of the animal by auction, order the animal given to a nonprofit animal shelter, pound, or society for the protection of animals, or order the animal humanely destroyed if the court decides that the best interests of the animal or that the public health and safety would be served by doing so. In this subsection, "farm livestock" means cattle, hogs, sheep, goats, mules, horses, jacks, jennets, or poultry raised or used on a farm or ranch for food or for the production of legal income....
>
> (g) The court shall order the animal returned to the owner if the court does not find that the animal's owner has cruelly treated the animal.

*Id.* § 821.023(e), (g) (Vernon Supp.2002). Section 821.025 allows an "owner of an animal ordered sold at public auction as provided in this subchapter" to appeal the order. *Id.* § 821.025 (Vernon 1992). The revisor's note to section 821.025 recognizes that section 821.025 applies to an appeal from the justice court to the county court:

> The source law provides *procedures for appealing a justice court's order* to sell an animal that has been cruelly treated. The revised law omits the provision that requires the appellant to give notice of appeal within 10 days *because procedures for appeal from a justice court* are provided by Rules 571–574, Texas Rules of Civil Procedure. The rules also provide procedures for adjudging court costs, and therefore the revised law

omits the provision in the source law authorizing the court to assess costs of the hearing. (See Rules 139 and 141, Texas Rules of Civil Procedure.) The revised law also omits a provision in the source law providing for appeals in county court because section 26.042(e), Government Code, *provides that the county court has appellate jurisdiction from the justice court* in cases in which the judgment appealed from or the amount in controversy exceeds $20, exclusive of costs.

*Id.* § 821.025 revisor's note (Vernon 1992) (emphasis added). The revisor's note makes clear that section 821.025 applies to an appeal from the justice court to the county court. We, therefore, overrule Hoog's first issue.

## NOTICE

■ Hoog complains that he was given insufficient notice that the hearing on January 2, 2001 was a full evidentiary hearing under section 821.023 of the Texas Health and Safety Code. Hoog, however, has waived this issue on appeal by failing to timely object to lack of notice, by failing to move for a continuance, and by fully participating in the January 2nd hearing. *See Custom–Crete, Inc. v. K–Bar Services, Inc.*, 82 S.W.3d 655, 658–59 (Tex.App.-San Antonio 2002, no pet. h.) (noting that three day notice requirement of setting of hearing under Texas Rule of Civil Procedure 21 may be waived by failure to object to lack of notice); *Prade v. Helm*, 725 S.W.2d 525, 526 (Tex.App.-Dallas 1987, no writ) (to preserve complaint of untimely notice under Rule 21, party must (1) object on specific grounds, or (2) move for continuance, and (3) obtain ruling); *see also Padilla v. Comm'n for Lawyer Discipline*, 87 S.W.3d 624, 626 (Tex.App.-San Antonio 2002, no pet. h.) (emphasizing that error resulting from trial court's failure to pro-

vide parties proper notice under Rule 245 is waived if party proceeds to trial and fails to object to lack of notice); *In re J.(B.B.)M.*, 955 S.W.2d 405, 408 (Tex.App.-San Antonio 1997, no pet.) (same). On January 2nd, Hoog asked the trial court whether the hearing was for the purpose of determining whether the cattle should be sold as perishable property under rule 600 of the Texas Rules of Civil Procedure or whether it was a hearing under chapter 821 of the Health and Safety Code. The trial court replied that the hearing was a proceeding under chapter 821. Hoog did not object or move for a continuance. Instead, he fully participated in the hearing by cross-examining a witness and by calling his own witness. We, therefore, overrule this issue.

## LEGAL SUFFICIENCY

■ Hoog argues that the evidence is legally insufficient, because there was no evidence that he was the owner of the cattle. In fact, the evidence conclusively shows that Hoog is not the owner. The trial court approved a stipulation between the parties that Thomas V. Hoog, not Charles Hoog, was the owner of the cattle:

> It was stipulated by the parties, Frio County and Charles T. Hoog, together with non-parties, Castroville State Bank and Thomas V. Hoog [that] ... 6. The cattle (152) head that are the subject of this lawsuit and upon which a ruling will be made by this Court form a part of cattle that *are cattle owned by Thomas V. Hoog who has legal title to them,* and form a part of the cattle that are subject to the lien of Castroville State Bank, and upon which Castroville State Bank has a lien and is the lien holder for its indebtedness owned by Thomas V. Hoog as reflected in the above named documents.

(emphasis added). Section 821.023 gives the trial court the authority to order the

sale of the cattle if it "finds that the *animal's owner has cruelly treated the animal*." *See* TEX. HEALTH & SAFETY CODE ANN. § 821.023(e) (Vernon Supp.2002) (emphasis added). Here, the trial court found that *Charles* Hoog cruelly treated the cattle while at the same time, approving the stipulation that *Thomas* Hoog was the owner of the cattle. There is, therefore, no finding by the trial court that the owner, Thomas Hoog, cruelly treated the cattle. Moreover, Thomas Hoog is a non-party, having never been joined as a defendant even after the State knew that he was the legal owner of the cattle.

■ The State responds by arguing that Charles Hoog was the "special owner" of the cattle. In criminal law, a "special owner" is an individual, such as an employee, who is in care, custody, or control of the property belonging to another person or a corporation. *Harrell v. State*, 852 S.W.2d 521, 523 (Tex.Crim.App.1993); *Liggens v. State*, 50 S.W.3d 657, 660 (Tex.App.-Fort Worth 2001, pet. ref'd). This legal fiction is created so that a store employee has sufficient interest in property taken during the course of a robbery to qualify as an owner of the property under the robbery statute. *See Liggens*, 50 S.W.3d at 660. The State requests that we expand this concept under criminal law to forfeiture cases in civil law. We decline to do so. Under the State's interpretation of a "special owner," the State could name an owner's employee in a warrant for seizure of an animal, and then a trial court could order the sale of that animal at auction upon a finding that the owner's employee had cruelly treated the animal, all without the animal's actual owner being named as a party to the forfeiture proceeding. The

legislature could not have intended such a result. We, thus, hold that the evidence was legally insufficient and sustain this issue.[6]

## CONCLUSION

Normally, upon a finding that the evidence was legally insufficient, we would reverse the judgment of the trial court and render judgment accordingly. This appeal, however, presents an unusual situation, because the stipulated owner of the cattle is a non-party. Therefore, because Charles Hoog is not the owner of the cattle, a forfeiture proceeding never should have been initiated against him. We vacate the judgment of the trial court and dismiss the trial court cause against Charles Hoog.

6. By holding that the evidence was legally insufficient, we need not reach Hoog's argument that the evidence was also legally insufficient because the trial court did not make a finding that the cattle were perishable property under Texas Rule of Civil Procedure 600. Similarly, we need not address Hoog's argument that the trial court should have returned the cattle to their owner, Thomas Hoog.