# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00548-CV

**Robert Neal Pointer, Jose B. Ramirez, and Jose Mangawang, Appellants**

**v.**

**The State of Texas and Robert Louiseau, Special Deputy Receiver for American Benefit Plans, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GV200903, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Robert Neal Pointer, Jose B. Ramirez, and Jose Mangawang appeal from the trial court's judgment against them in this receivership action.[1] The final judgment appoints a permanent receiver for a number of entities operated by appellants that engaged in the unauthorized sale of insurance, permanently enjoins appellants from continuing with these activities, and imposes civil penalties and costs against appellants. We affirm the trial court's judgment.

### Factual and Procedural Background

The State of Texas filed suit to stop appellants' unauthorized sale of insurance, marketed as "American Benefit Plans." Multiple unrelated employers remit monthly contributions

---

[1] Robert David Neal filed a notice of appeal in this cause, but took no further action. Accordingly, he was dismissed as an appellant. *See Pointer v. State*, No. 03-02-548-CV (Tex. App.—Austin March 5, 2003) (order).

and fees to American Benefit Plans, which then contracts with third-party administrators and healthcare networks to administer medical claims, provide a prescription drug program, and provide access to discounts for medical services. These unrelated employers execute "Plan Adoption and Employer Agreements," enroll in the National Association of Working Americans (NAWA), the United Employers Voluntary Employees Beneficiary Association (UEVEBA) or UEVEBA I. NAWA is designated as the association administrator and UEVEBA or UEVEBA I is designated as the plan trust. Appellants succeeded in enrolling several hundred employers in these health plans designed and marketed by appellants.

Unfortunately, few claims ever were paid. Funds from the participants were commingled. Rather than paying claims, these funds were used to pay salaries and, in one instance, to purchase control of the First American Christian Society, a fraternal benefit organization, for Robert David Neal's family. These activities resulted in the current litigation and injunction against appellants.

Appellants[2] bring ten issues: (1) appellants were themselves victims of American Benefit Plans and Robert David Neal; (2) the court erred in failing to determine whether each of the single-employer welfare benefit plans at issue was in fact a self-funded single-employer welfare benefit plan exempt from state regulation; (3) the court erred in failing to determine whether

---

[2] We note that appellants have acted *pro se* in this litigation. However, litigants choosing to act *pro se* must comply with the applicable procedural rules and are held to the same standards that apply to licensed attorneys. *See In re Estate of Dilasky*, 972 S.W.2d 763, 766 (Tex. App.—Corpus Christi 1998, no pet.); *Greenstreet v. Heiskell*, 940 S.W.2d 831, 834-35 (Tex. App.—Amarillo 1997, no writ). To treat the *pro se* litigant differently would accord an unfair advantage over litigants represented by counsel. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978).

2

UEVEBA I was a designated non-profit tax-exempt trust for the self-funded single-employer ERISA welfare benefit plans; (4) the court erred in failing to determine that the self-funded single-employer ERISA welfare benefit plans and their designated trust are exempt from state regulation and cannot be considered to be engaged in the business of insurance; (5) the court erred by making the determination that UEVEBA is a multiple employer welfare arrangement subject to state regulation without the "substantiated evidence" of a final agency determination from the U.S. Department of Labor; (6) the court erred in failing to determine that ERISA preempted the State's actions; (7) the court erred by dismissing appellants' cross-complaint without notice of the hearing; (8) the court erred in assessing civil money penalties; (9) the court erred in failing to grant a new trial for "procedural violations" by the State of Texas; and (10) the court erred in failing to determine that UEVEBA is not an unauthorized insurer or engaged in the business of insurance. We address these issues grouped as: lack of notice (issues seven and nine); ERISA preemption (issues two, three, four, five, six, and ten); and assessment of penalties (issue eight).[3]

---

Mangawang is an actuary allowed to represent clients in front of the Internal Revenue Service; Ramirez (also known as "Johnny Rhondo") holds several California insurance licenses and describes himself as a "Business Organizational Expert" who combines the skills of a lawyer, accountant, insurance agent, public relations agent and efficiency expert; Pointer holds a degree in advertising design. Appellants Ramirez and Mangawang filed one brief; appellant Pointer essentially adopted the brief of Ramirez and Mangawang; he raised no different issues. All three will be referred to collectively as "appellants."

---

[3] Although appellants urge as their first issue that they are "victims" of Robert David Neal, the issue is not briefed and so is waived. *See* Tex. R. App. P. 38.1(h). We do not, however, find support for this contention in the record.

**Discussion**

*Notice*

Appellants complain that they did not receive notice of the May 28 setting for the hearing that resulted in the final judgment; appellants urge that this "procedural violation" should have resulted in a new trial. The record shows that in its "Interim Temporary Injunction" signed March 19, 2002, the district court set a hearing on the permanent injunction for May 28, 2002. Appellants complain that they understood a hearing was set on the permanent injunction, but did not think that the permanent injunction setting included all of the issues in the case. However, a hearing to decide whether to enter a permanent injunction is necessarily a trial of all of the issues in the case. *See Elizondo v. Williams*, 643 S.W.2d 765, 767 (Tex. App.—San Antonio 1982, no writ) (permanent injunction not dependent on any future action by court and grants all relief that court intended to grant in that case); *see also State v. Gibson's Distrib. Co.*, 436 S.W.2d 122, 124 (Tex. 1968) (trial court could not have rendered final judgment or permanent injunction in this case, and cannot until case tried on merits); *cf. Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978) (appellate court erred in its review of *temporary injunction* by full consideration of merits of underlying lawsuit; order on remand would give full relief on merits, depriving litigants of jury trial). The temporary injunction order setting the cause stated that the temporary injunctive relief continued "until this case is decided after a final hearing on the merits." *See* Tex. R. Civ. P. 683 (order granting temporary injunction shall include order setting cause for trial on merits with respect to ultimate relief sought).

4

Further, although appellants participated in the trial on May 28, no appellant complained about lack of notice or the scope of the trial, including action on the cross-complaint, against which a motion to dismiss had been filed. No party moved for a continuance. Accordingly, those complaints are waived. *Hoog v. State*, 87 S.W.3d 740, 745 (Tex. App.—San Antonio 2002, pet. denied) (when party failed timely to object to notice or seek continuance and instead participated in trial, any objection to lack of notice waived); *Manning v. North*, 82 S.W.3d 706, 714 (Tex. App.—Amarillo 2002, no pet.) (when party participates in hearing without notifying court of any complaint, that party has waived its right to object to lack of notice).[4] We overrule issues seven and nine.

*Preemption*

The crux of appellants' complaint is that the State of Texas may not regulate their plan as insurance because ERISA[5] preempts any such state action. *See* 29 U.S.C.A. § 1144(b)(2)(B) (West 1998). However, ERISA does not preempt state regulation in all circumstances. *See id.* § 1144(b)(6). In reaction to abuses of the ERISA preemption doctrines by entities engaging in illegal insurance schemes, Congress amended the statute to clarify the states' rights to regulate certain "multiple-employer welfare arrangements" (MEWAs) irrespective of whether they otherwise

[4] Appellants contended in their motion for new trial that counsel for the receiver misrepresented the scope of the trial. Counsel for the receiver testified that he had stated that the hearing would be on the permanent injunction but did not further elaborate on the scope of relief involved. The court found no misrepresentation. The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000).

[5] Employees' Retirement Income Security Act, 29 U.S.C.A. §§ 1001-1461 (West 1998, 1999 & Supp. 2002).

qualified as ERISA plans. *See Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 5 (2d Cir. 1993); *Fuller v. Norton*, 86 F.3d 1016, 1023-24 (10th Cir. 1996).

The issue then is whether the plan appellants offered is a MEWA. If so, it is subject to regulation under the Texas Insurance Code.[6] A MEWA is:

> an employee welfare benefit plan, or any other arrangement . . . established or maintained for the purpose of offering or providing any benefit . . . to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained —
>
> (i) under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements,
>
> (ii) by a rural electric cooperative, or
>
> (iii) by a rural telephone cooperative association.

29 U.S.C.A. § 1002(40)(A) (West 1999). In a MEWA, liabilities and contributions from multiple unrelated employers are pooled. Appellants claim that they ran 400 discrete single-employer plans. The trial court's finding to the contrary is supported by legally and factually sufficient evidence.

Although Ramirez claimed that 400 discrete single-employer plans existed, he admitted that funds were pooled in a single account. According to the accounting analysis performed upon the appointment of a temporary receiver, funds were freely commingled; there was no

---

[6] The plans that are the subject of this litigation have been found to be MEWAs subject to regulation and "cease and desist" orders have been issued in Arkansas, Colorado, Florida, and Louisiana. The Department of Labor informed the Texas Department of Insurance that it considered the plan a MEWA subject to regulation and that ERISA preemption did not apply. *See* Letter from Office of Regulations and Interpretations, U.S. Department of Labor, to Texas Department of Insurance (Mar. 18, 2002).

documentation of transactions between entities. Tom Petrosewitz, CPA, audited appellants' main office. He was surprised at the disarray of the financial records. There were no formalities observed to distinguish between various plans or claims paid for specific employees to tie to each supposed discrete single-employer plan. Kelly Reimers, a member of the receivership staff, testified that the offices were in disarray; piles of paper were everywhere, a general ledger (either physical or computer) could not be found, and there was a general lack of the type of business documents one would expect to find. Appellants' contrary evidence consisted of their testimony and assertions that the plans were ERISA plans not subject to regulation; they did not produce any independent evidence to refute the State's accounting testimony. The trier of fact was free to weigh and even disregard testimony. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000). There was sufficient evidence to support the trial court's finding of fact that the plan fit the definition of a MEWA and thus its conclusion that it was subject to state regulation. Accordingly we overrule issues two, three, four, five, six, and ten.

### *Penalties*

Appellants claim that there was a "rush to judgment" that improperly resulted in all four appellants being held jointly and severally liable for administrative penalties. The evidence showed a common enterprise, interrelated entities, common management, and shared responsibility among appellants. The UEVEBA "Policies and Protocols" manual explained that American Benefit Plans designs health-care plans, which NAWA implements. Ramirez and Mangawang ran UEVEBA from offices in California, while NAWA was run by Neal and Pointer from offices in Texas. The activities and enterprises were interrelated and support a joint and several penalty.

7

Appellants' "rush to judgment" complaint basically reurges the notice complaint previously addressed. Entry of a permanent injunction allows the receiver to set a deadline to file proofs of claim, identify claimants, attempt to pay such claims, begin recouping assets from third parties in other states, and otherwise protect the State's and consumer interests to a greater degree than the interlocutory temporary injunction. Further, there was no rush to set the permanent injunction hearing—had appellants not removed the case to federal court after the temporary injunction set the hearing on the permanent injunction, they could have focused on dealing with the state court action. We overrule issue eight.

**Conclusion**

We conclude that appellants offered a multiple-employer welfare arrangement subject to state regulation. We have overruled all of appellants' issues presented and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 30, 2003

8