(935 P.2d 225)
No. 75,286

DALLAS NICOLE MAJOR, a minor, by and through her natural mother and next friend, SHELLI MAJOR, *Appellant*, v. CASTLEGATE, INC., *Appellee*.

Opinion filed March 28, 1997.

*Patrick C. Smith*, of Spigarelli, McLane & Short, of Pittsburg, for appellant.

*Donald C. Bollard* and *Richard D. Fry*, of Sherman, Taff & Bangert, P.C., of Leawood, for appellee.

Before ROYSE, P.J., PIERRON, J., and DEAN J. SMITH, District Judge Retired, assigned.

ROYSE, J.: This negligence action arises out of injuries sustained by the minor plaintiff, Dallas Nicole Major, at a company picnic sponsored by Castlegate, Inc. (Castlegate). Plaintiff's mother, Shelli Major, brought this action on her daughter's behalf, alleging that Castlegate was negligent in failing to exercise reasonable care to assure that the picnic and accompanying activities were conducted in a manner safe to participants and spectators. Specifically, plaintiff claimed Castlegate negligently failed to supervise the placement of a badminton court and a horseshoe pit.

Castlegate filed a motion for summary judgment, arguing that it had no duty to supervise the picnic. The district court granted Castlegate's motion, determining that Castlegate owed no duty to supervise the activities at the picnic and that the placement of a horseshoe pit next to a badminton court was not the proximate cause of plaintiff's injury. Plaintiff appeals.

Castlegate manufactures steel doors for residential and commercial use. It has sponsored a picnic for its employees, their families, friends, and neighbors for many years. Attendance at the picnic is voluntary. The 1992 picnic was held at Lincoln Park, a park facility owned and maintained by the City of Pittsburg. The picnic was held on a Saturday, which is not a regular working day at Castlegate. Several hundred people were in attendance.

Steven Cox, Vice-President of Operations at Castlegate, determined the amount of money Castlegate would spend on the 1992 picnic. The company paid for all of the food, drinks, game prizes, and recreational activities offered at the park, such as on-site swimming and golf. Cox authorized his assistant, Ramona Layng, to organize the picnic and to obtain the assistance of employee volunteers. Layng reserved the shelter houses, made arrangements for a caterer, and publicized the date for the picnic. Castlegate employees did meet at least once during Castlegate's working hours to discuss plans for the picnic.

Phillip Delmez worked for Castlegate as a paint booth operator. He set up the badminton game. Don Townsend worked for Castlegate as a computerized rotator operator. He brought Castlegate's horseshoe equipment to the park and set up the horseshoe game after the badminton game had been put in place. The badminton game was west of the horseshoe pit, with the badminton net 20 to 25 feet from the nearest horseshoe stake. No portion of the badminton court was less than 10 feet from the nearest horseshoe stake. The fish tank was east of the horseshoe pit, but the record does not disclose the distance between those two sites.

Plaintiff, who was 7 years old, attended the picnic with her father, stepmother, and stepsister. Upon their arrival at the picnic, the family played badminton. While in the badminton area, plaintiff, her father, and her stepmother could observe people throwing horseshoes in the horseshoe pit. After they stopped playing badminton, plaintiff put her badminton racket down and started running over to the fish tank game. Plaintiff ran through the middle of the horseshoe pit between the horseshoe stakes just as one of the players threw a horseshoe. Although he called out a warning, she was struck in the head by the horseshoe.

This case is before us on a motion for summary judgment. The applicable standard of review is well settled:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

Plaintiff first argues that Castlegate is liable under the doctrine of respondeat superior. Respondeat superior may be used in ap-

propriate cases to hold an employer liable for the negligence of its employee. See *Voss v. Bridwell*, 188 Kan. 643, 656, 364 P.2d 955 (1961); *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, Syl. ¶ 5, 87 P.2d 552 (1939). As the district court correctly noted, the test in determining the existence of agency, so that the liability for a servant's negligence will be imputed to the master, is the right to control the purported servant. *First National Bank of Denver v. Caro*, 211 Kan. 678, 681, 508 P.2d 516 (1973); *Hendrix v. Phillips Petroleum Co.*, 203 Kan. 140, 155, 453 P.2d 486 (1969). Whether there is any competent evidence to prove the existence of agency is a question of law. 203 Kan. at 155.

Plaintiff contends the employee volunteers were acting as Castlegate agents, under Castlegate control, when they set up the games at the picnic. To support this contention, plaintiff relies on two assertions that are unsupported by the record: (1) that Steven Cox made the final decision concerning what events would be included at the picnic and (2) that Ramona Layng, acting as Castlegate's agent, directed the placement of the badminton court and the horseshoe pit. Although plaintiff's brief includes citations to the record, the material cited provides no factual support for these assertions. Assertions of counsel in an appellate brief do not constitute evidence or remedy inadequacies in the record on appeal. *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, 207, 836 P.2d 1193 (1992).

To support her respondeat superior claim, plaintiff also relies on an ex parte telephone statement from Delmez, the Castlegate employee who set up the badminton net. This statement was taken by plaintiff's counsel after suit was filed and while Delmez remained a Castlegate employee. The district court observed that this ex parte statement was not formally a part of the record before it, a finding which plaintiff does not challenge. See *Chancellor v. Boeing Co.*, 678 F. Supp. 250 (D. Kan. 1988); *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 697, 715 P.2d 2 (1986). The district court further concluded that the ex parte statement provided no warrant for plaintiff's contention that Ramona Layng, acting as an agent of Castlegate, exercised control over the volunteers who prepared the game sites. We agree.

The record contains the sworn affidavits of Delmez, Townsend, and Layng. All three persons stated that the employee volunteers who set up the games made the decision where to put them. Even the ex parte statement relied on by plaintiff refers only to the badminton court; it contains no indication that Castlegate had control over the placement of the horseshoe pit beside the badminton court.

Plaintiff points to two cases to support her claim that Castlegate bore a duty to exercise reasonable care for the safety of the picnic participants. The first is *Easler v. Amusement Co.*, 125 Me. 334, 133 A. 905 (1926). *Easler* arose out of injuries sustained by a minor plaintiff who was watching an impromptu game of baseball played by off-duty circus employees. The plaintiff was struck by a makeshift bat which slipped from the batter's hands. The accident occurred on the circus grounds shortly before the evening performance. The Maine Supreme Court affirmed a jury verdict in favor of the plaintiff. The court relied on premises law, holding that a circus, which invites spectators to view all parts of the circus grounds between shows, owes those business invitees an affirmative duty to prevent unauthorized sporting activities by its employees or to take due precautions to protect those spectators. The court specifically rejected any claim of liability based upon respondeat superior.

Plaintiff's reliance on *Easler* is misplaced. First, *Easler* rejected a claim that the circus was liable under the doctrine of respondeat superior. In addition, unlike the plaintiff in *Easler*, the plaintiff here has not asserted any claim based on premises liability. In fact, the plaintiff's injury did not occur on Castlegate's premises. Moreover, while the court in *Easler* reasoned that injury to spectators from an impromptu employee baseball game was foreseeable, the opinion provides no basis for concluding it is reasonably foreseeable that an individual will intentionally run through the middle of a horseshoe pit while the horseshoe game is in progress.

The second case relied on by plaintiff is *Ackerson v. Jennings Co., Inc.*, 107 Conn. 393, 140 A. 760 (1928). In *Ackerson*, an individual named Wilcox, the branch manager of the defendant company, hosted a dinner for his employees. Because none of the em-

ployees invited to the dinner owned cars, Wilcox directed that they be driven to the dinner in a company-owned car driven by a designated company employee. The driver caused an accident in which one employee was injured and another killed. Plaintiffs sought damages from the defendant company on the grounds that the dinner and trip were within the scope of the company's business.

The trial court granted a directed verdict to the defendant company, and the Connecticut Supreme Court reversed. In its opinion, the court emphasized that there was evidence in the record which would justify a jury's determination that Wilcox was acting within the scope of his employment with the company in giving the dinner and that the driver was transporting the other employees at Wilcox's express direction.

*Ackerson* is distinguishable from this case. First, the picnic sponsored by Castlegate lacked the features of a business meeting which characterized the *Ackerson* dinner. No member of Castlegate management gave a speech at the picnic to discuss the importance of employees bringing their grievances to him. A second factor distinguishing *Ackerson* is that the record in this case contains no evidence that Castlegate directed Delmez and Townsend in setting up the games. Certainly, Castlegate did not order those individuals to set up the games; the record clearly indicates they volunteered to do so. Finally, plaintiff does not claim on appeal that the employee who threw the horseshoe which struck her was acting as an agent of Castlegate. *Ackerson*, in short, provides no basis for imposing a duty on Castlegate in this case.

Based on our review of the record, we conclude the district court did not err in determining that the uncontroverted facts showed Castlegate was entitled to judgment on plaintiff's respondeat superior theory.

Plaintiff also argues that because Castlegate undertook to sponsor the picnic, it assumed a duty to use reasonable care in organizing the picnic. Although plaintiff does not articulate precisely the duty claimed, she seems to say that because Castlegate provided the impetus for this picnic, it should have foreseen the risks asso-

ciated with a picnic and exercised reasonable care to assure the safety of picnic participants.

A review of the elements of negligence is helpful in examining this argument.

"For negligence to exist there must be a duty owed by one person to another and a breach of that duty. The injured party must show: (1) a causal connection between the duty breached and the injury received and (2) damage from negligence." *Calwell v. Hassan*, 260 Kan. 769, 777, 925 P.2d 422 (1996).

Whether a duty exists is a question of law, although whether the duty has been breached is a question of fact. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

" '[D]uty' has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' An act is wrongful, or negligent, only if a prudent person would perceive the risk of damage. The risk to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. The existence of negligence in a given case will depend upon the particular circumstances which surround the parties at the time of the occurrence on which the controversy is based." *Schrader v. Great Plains Electric Co-op Inc.*, 19 Kan. App. 2d 276, Syl. ¶ 3, 868 P.2d 536, *rev. denied* 255 Kan. 1003 (1994).

Plaintiff asserts that games like horseshoes are obviously dangerous and, thus, it was foreseeable that placing a horseshoe pit near a badminton court would endanger someone. This case, however, does not involve a horseshoe striking a spectator or injuring a person who was playing on the badminton court. Instead, this injury occurred right in the middle of the area set aside for throwing horseshoes. It cannot be said that a prudent person sponsoring a picnic would reasonably foresee that someone would choose to run between the horseshoe stakes while a game was obviously in progress.

"Negligence must be predicated upon what one should anticipate rather than merely on what actually happened. [Citation omitted.] That someone, after an accident, can think of things which, if done, might have made the accident less likely does not constitute proof of negligence." *Schrader*, 19 Kan. App. 2d at 282; see *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 549, 856 P.2d

1332 (1993); *Cupples v. State*, 18 Kan. App. 2d 864, 879, 861 P.2d 1360 (1993).

For these reasons, we conclude the district court did not err in holding Castlegate owed no duty to plaintiff to supervise the placement of the badminton court and horseshoe pit in order to assure the safety of picnic participants.

Plaintiff's third argument on appeal is that the district court erred in concluding as a matter of law that the placement of the horseshoe pit next to the badminton court was not the proximate cause of plaintiff's injury.

"The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987).

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur, while possible consequences are those which happen so infrequently that they are not expected to happen again." *Rowell v. City of Wichita*, 162 Kan. 294, 302, 176 P.2d 590 (1947).

Plaintiff is correct that ordinarily the question of proximate cause is a question of fact for the jury. "However, where the facts are such that they are susceptible to only one inference, the question is one of law and may be disposed of summarily by the court when the plaintiff has failed to establish the necessary burden of proof." 240 Kan. at 557; accord *Davey v. Hedden*, 260 Kan. 413, Syl. ¶ 7, 920 P.2d 420 (1996).

As noted earlier, this is not a case in which a spectator was struck by a wayward horseshoe. This is not a case in which a badminton participant, caught up in the excitement of a badminton game, forgot about the proximity of the horseshoe pit and ventured into the path of a horseshoe. This is a case in which the plaintiff, having decided to leave the badminton court and go to the fish tank, ran a distance of roughly 25 feet before passing directly between the horseshoe stakes. There is nothing in the record to show that, due

to the proximity of the games, plaintiff was required to run across the horseshoe pit as she travelled from the badminton court to the fish tank.

We agree with the district court that the placement of the horseshoe pit next to the badminton court was not the proximate cause of plaintiff's injury. Plaintiff's accident was not a natural and probable result of placing the horseshoe pit next to the badminton court. Her accident was not a consequence that happens so frequently that Castlegate was bound to anticipate it would result from the relative placement of the two games.

It is most unfortunate that plaintiff suffered severe injury and damage. But we, like the trial court, are bound by the rules of law applicable to negligence claims. The district court did not err in granting Castlegate's motion for summary judgment.

Affirmed.