Rhonda Sue WESLEY, Plaintiff,

v.

DON STEIN BUICK, INC.; Don Stein; Jerry Kaplan; Multiple Unnamed Sales Agents of Don Stein Buick–Isuzu, Inc.; American Isuzu Motors, Inc.; General Motors Corporation; T.A. Stovall; One Unnamed Desk Clerk of Overland Park, Kansas Police Department; John M. Douglass, Overland Park Chief of Police; City of Overland Park; and Ed Eilert, Mayor of Overland Park, Defendants.

No. 97–2271–JWL.

United States District Court, D. Kansas.

Feb. 26, 1998.

---

Rhonda Sue Wesley, Kansas City, MO, pro se.

Lawrence L. Ferree, III, Kirk Thomas Ridgway, Ferree, Bunn & O'Grady, Chtd., Overland Park, KS, for Don Stein Buick, Inc., Don Stein, Shareholder, Jerry Kaplan, Shareholder, Multiple Unnamed Sales Agents, of Don Stein Buick-Isuzu, Inc., American Isuzu Motors, Inc.

Robert J. Harrop, David C. Vogel, Yvonne M. Warlen, Lathrop & Gage L.C., Kansas City, MO, for General Motors Corp.

Michael R. Santos, City of Overland Park Legal Dept., Overland Park, KS, Daniel B. Denk, Michael M. Shultz, McAnany, Van Cleave & Phillips, P.A., for T. A. Stovall, One Unnamed Desk Clerk, of Overland Park, Kansas, Police Dept., John M. Douglass, Chief of Police, City of Overland Park Police Dept., City of Overland Park, Kansas.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for Frederick S. Hillman, Special Agent of FBI, William M. Chornyak, Supervisory Special Agent of F.B.I., Louis J. Freeh, Director of F.B.I., Unnamed Agent, from the Office of The U.S. Postal Inspector, U.S.P.S., Marvin Runyon, Postmaster General U.S.P.S.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case arises out of an incident which occurred at the Don Stein Buick, Inc. premis-

es in Overland Park, Kansas, and as a result of the subsequent efforts of plaintiff to have the matter investigated and charges prosecuted by various authorities. By memorandum and order of November 20, 1997, the court, *inter alia*, dismissed multiple claims and granted plaintiff leave to amend her complaint to supplement certain other claims. *Wesley v. Don Stein Buick, Inc.*, 985 F.Supp. 1288 (D.Kan.1997). The matter now comes before the court on six separate motions. Defendants T.A. Stovall, John M. Douglass, Ed Eilert, the unnamed desk clerk, and the City of Overland Park (collectively the "Overland Park Defendants") move to dismiss plaintiff's claims on substantive grounds (Doc. 103), and qualified immunity grounds (Doc. 65). Defendant American Isuzu Motors, Inc. ("AIMI") moves for summary judgment (Doc. 109). Defendant General Motors Corporation ("GM") moves to strike plaintiff's second amended complaint (Doc. 89). Former defendants Moneca Mills and the United States Postal Service move the court to amend its November 20, 1997 memorandum and order (Doc. 100). Finally, plaintiff moves the court to order AIMI to pay the costs associated with effecting service of process (Doc. 79).

For the reasons set forth below, the Overland Park Defendants' motion to dismiss on substantive grounds is granted in part and denied in part. The Overland Park Defendants' motion to dismiss on qualified immunity grounds is granted in part and denied in part. AIMI's motion for summary judgment is granted. GM's motion to strike is denied as moot. The motion to alter or amend by defendants Mills and the United States Postal Service is granted in part. Plaintiff's motion for costs is denied.

## I. Introduction [1]

Plaintiff, an African–American female, alleges she went shopping for a car at Don Stein Buick, Inc. ("Don Stein"), but sales agents there ignored her when she refused to disclose what she felt was "irrelevant personal information." Despite the sales agents' efforts to ignore her, plaintiff persisted in trying to obtain sales assistance. The agents

eventually chased her off the lot, wielding pens and threatening her and her property with menacing gestures and voices.

Plaintiff telephoned the Overland Park Police Department to report the incident. Officer T.A. Stovall arrived and plaintiff gave the officer a written statement. The police instructed the plaintiff to wait outside on the Don Stein lot while certain officers went inside the showroom to speak with Don Stein sales agents. When the officers left the showroom, Officer Stovall told plaintiff she could obtain a copy of her statement by requesting it at the Overland Park Police Department on October 14, 1996.

On the designated day, plaintiff went to the police department to request a copy of her statement. The desk clerk in charge of such matters was waiting on white patrons when plaintiff arrived. Plaintiff saw and heard the desk clerk transact with "similarly-situated white individuals" regarding criminal incidents that had occurred the same weekend as plaintiff's alleged incident. The clerk made copies for these white patrons in return for a nominal charge. When plaintiff's turn in line came, the desk clerk apparently pulled plaintiff's file, read something in it, and then refused to provide plaintiff with a copy of her written statement. Plaintiff received a copy approximately two and a half months later after she had complained to various police officials. The Overland Park Police Department took no further action concerning plaintiff's problems with Don Stein.

Unsatisfied with local progress in the matter, plaintiff contacted the United States Attorney's office. Her complaint was apparently forwarded to the FBI. She spoke with Agent Frederick S. Hillman, who eventually asked her to provide her street address. She refused, stating that the post office box number she had already provided was sufficient. Plaintiff later learned that an agent of the United States Postal Inspector instructed a postal employee at her post office to pull her box registration card and reveal her street address, which was conveyed to Agent Hillman.

1. These allegations are taken from plaintiff's amended complaint (Doc. 99).

## II. Motion to Dismiss

Plaintiff brings this action pro se against the Overland Park Defendants under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. In its prior order (Doc. 95), the court dismissed with prejudice plaintiff's section 1983 and 1985 claims against the City of Overland Park, Chief Douglass, and Mayor Eilert.[2] The court found plaintiff's section 1983 conspiracy claims and her section 1985 claims against the remaining Overland Park Defendants deficient but nevertheless granted plaintiff leave to amend these claims. Plaintiff did not amend her section 1983 conspiracy claim and it is therefore dismissed pursuant to the court's prior order.[3] The Overland Park Defendants now move to dismiss plaintiff's remaining claims.

### A. Standard

Dismissal of a cause of action for failure to state a claim is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir.1996), or where an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Fuller,* 86 F.3d at 1020. All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Jojola v. Chavez,* 55 F.3d 488, 494 n. 8 (10th Cir.1995) (citing *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984)). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

When a plaintiff appears pro se, the court construes her pleadings liberally and judges them against a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). If a pro se plaintiff's complaint can reasonably be read to state a claim upon which the plaintiff could prevail, the court should deny a motion to dismiss despite the plaintiff's failure to cite proper authority, confusion of various legal theories, or unfamiliarity with pleading requirements. *Id.* However, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991), nor should it "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. New Mexico,* 113 F.3d 1170, 1173–74 (10th Cir.1997).

### B. Section 1981 Claims

The Overland Park Defendants move to dismiss plaintiff's section 1981 claims against them. Section 1981 provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoy-

---

**2.** The Overland Park Defendants interpret the court's prior memorandum and order as dismissing the City of Overland Park, Mayor Eilert, and Chief Douglass entirely from this action. The court's memorandum and order was not so far-reaching, however. *See Wesley,* 985 F.Supp. at 1305–06 (dismissing plaintiff's section 1983 and 1985 claims against these defendants without addressing plaintiff's section 1981 and 1986 claims against these defendants). In any event, the court today dismisses plaintiff's section 1981 and 1986 claims against Chief Douglass and

Mayor Eilert. *See infra.* No further claims remain against these individuals. Plaintiff's section 1981 claim against the City of Overland Park remains intact. *See infra.*

**3.** Plaintiff's substantive section 1983 claims (i.e. her claims for denial of equal protection) are unaffected by the automatic dismissal of her section 1983 conspiracy claim. Her conspiracy claims under section 1985 are similarly unaffected by that dismissal.

ment of all benefits, privileges, terms, and conditions of the contractual relationship. The *Overland Park Defendants* contend that plaintiff's section 1981 claim must fail for two reasons: (1) she has failed to allege that the Overland Park Defendants deprived her of any right to make or enforce a contract, and (2) she has failed to allege that the Overland Park Defendants engaged in racial discrimination.

■ The court concludes that dismissal is not warranted as to Officer Stovall or the unnamed desk clerk because it does not believe the Overland Park Defendants' motion papers address the possibility that plaintiff's section 1981 claims fall within the provisions of section 1981 that do not relate to contracts. *See* § 1981(a) ("All persons ... shall have the same right ... to sue, be parties, give evidence, and to the full and equal benefit of all laws"); Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions*, ¶¶ 5.03[B]-[C], at 5–16 to –23 (1997). Ms. Wesley alleged that Officer Stovall, motivated by racial animus, refused to investigate her complaint adequately or timely. Ms. Wesley alleged that the unnamed desk clerk, whose conduct seemed to imply a racial animosity, refused to provide the evidence she needed to pursue her claims and denied her request to receive a benefit enjoyed by white people. Although the court does not decide the issue today, Ms. Wesley's allegations might state a claim under the judicial process or equal benefit clauses of section 1981. The Overland Park Defendants' motion to dismiss does not address this possibility. Accordingly, the court believes dismissal would be inappropriate at this time.

The court further concludes that dismissal is not warranted as to the unnamed desk clerk because it does not believe the Overland Park Defendants' motion papers address the possibility that the clerk deprived plaintiff of her right to contract for the receipt of copies of certain police file documents. Plaintiff's second amended complaint claims that the desk clerk made copies of various file items and gave them to apparently similarly situated white patrons for a nominal fee. The desk clerk allegedly refused to provide this same service to plaintiff because

plaintiff is African–American. Although the court declines to decide the issue without full briefing, the clerk's alleged conduct might have violated section 1981 by impeding plaintiff's right to contract. *See* Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions*, ¶ 5.12, at 5–72 (1997) ("[A section 1981] cause of action may arise whenever a party offers to sell ... services to the public generally, but refuses to do business with a potential customer because of [his or] her race.").

■ The *Overland Park Defendants* also assert that Mayor Eilert, Chief Douglass, Officer Stovall, and the unnamed desk clerk are entitled to qualified immunity from suit under section 1981. Government officials performing administrative or executive functions have qualified immunity from suit under civil rights statutes if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Patrick v. Miller*, 953 F.2d 1240, 1249–50 (1992) (discussing qualified immunity from suit under section 1981). "Once a defendant asserts qualified immunity, the plaintiff bears the burden of proving that the defendants violated a law that was clearly established." *Norton v. Village of Corrales*, 103 F.3d 928, 933 (10th Cir.1996) (citation omitted). "The plaintiff must make a particularized showing, demonstrating that the contours of the violated right were so established that a reasonable official would understand that what he [or she] was doing violated that right ... or that the official did not act in good faith." *Id.* (citations omitted).

■ The court concludes that Mayor Eilert and Chief Douglass are entitled to qualified immunity from section 1981 suit because plaintiff has failed to allege any facts or cite any law demonstrating that they violated the provisions of section 1981. Nothing on the face of plaintiff's complaint demonstrates that these defendants acted with racial animus to deprive plaintiff of a clearly established section 1981 right. Accordingly,

plaintiff's section 1981 claims against these defendants are dismissed.[4]

The court concludes that Officer Stovall and the unnamed desk clerk, however, are not entitled to qualified immunity from suit under section 1981 because the Overland Park Defendants' motion does not address the section 1981 allegations in plaintiff's amended complaint.[5] The motion for qualified immunity from section 1981 suit is denied as to these defendants.

## C. Section 1983 Claims

Plaintiff asserts that Officer Stovall and the unnamed desk clerk violated her right to equal protection of the laws under the Fourteenth Amendment. She claims that these defendants, motivated by racially discriminatory animus, delayed her opportunity to pursue redress and refused to make a good-faith effort to investigate the Don Stein incident. The Overland Park Defendants move to dismiss because they believe plaintiff's allegations of purposeful discrimination are too conclusory.

■ The court is not convinced by defendants' arguments. The unnamed desk clerk allegedly treated plaintiff differently than similarly situated white persons solely because plaintiff is an African–American. Officer Stovall allegedly refused to investigate plaintiff's complaint adequately because of a "racially and/or class based discriminatory animus." These allegations are sufficient to withstand a motion to dismiss under the federal rules. See Fed.R.Civ.P. 8(a)(2) (pleading need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fuller v. Norton, 86 F.3d 1016, 1020 (10th Cir.1996) (dismissal for failure to state a claim is appropriate only where it appears beyond a doubt

that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle her to relief); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading standard in section 1983 cases); Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (equal protection claimant must allege purposeful discrimination).

Defendant argue that Durre v. Dempsey, 869 F.2d 543 (10th Cir.1989), and Swoboda v. Dubach, 992 F.2d 286 (10th Cir.1993) compel a different conclusion. The court disagrees. In Durre, a plaintiff's conclusory conspiracy claims were dismissed because "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim" in the Tenth Circuit. Id. at 545 (emphasis added). Durre does not help the defendants because Ms. Wesley's section 1983 equal protection claims against these defendants do not involve allegations of conspiracy; the claims simply are not subject to the same heightened pleading standard. In Swoboda, a plaintiff's general allegations of unconstitutional conditions at a county jail were dismissed primarily because the plaintiff lacked standing—he did not specify how the alleged conditions affected him or injured him. Id. at 289. Swoboda does not help these defendants because Ms. Wesley's complaint contains no such standing problem; it clearly specifies the way in which Officer Stovall's alleged conduct injured her.

The Overland Park Defendants also assert that Officer Stovall and the unnamed desk clerk are entitled to qualified immunity from suit under section 1983. The court disagrees because these defendants' motion does not address the section 1983 claims in plaintiff's amended complaint.[6] The motion for quali-

---

**4.** The court's grant of qualified immunity to these defendants has no bearing on the city's liability under section 1981. The city has as yet advanced no theory upon which the court would dismiss plaintiff's section 1981 claim against it.

**5.** Through no fault of their own, the Overland Park Defendants were unable to aim their motion at a fixed target because the court granted plaintiff leave to amend her complaint well after these defendants filed their original motion. The court will, of course, entertain a motion for sum-

mary judgment or a renewed motion to dismiss on qualified immunity grounds should these defendants wish to file one.

**6.** As with the section 1981 claims, the Overland Park Defendants were unable to aim their motion at a fixed target because the court granted plaintiff leave to amend her complaint well after these defendants filed their original motion. The court will, of course, entertain a motion for summary judgment should these defendants wish to file one.

fied immunity from section 1983 suit is denied.

### D. Section 1985 Claims

Plaintiff asserts that Officer Stovall and the unnamed desk clerk, motivated by racially discriminatory animus, conspired among themselves or others to impede the due course of justice, see § 1985(2), or deny her equal protection of the laws, see § 1985(3). The Overland Park Defendants argue that Officer Stovall and the clerk are entitled to dismissal because the plaintiff has inadequately alleged the existence of a conspiracy.

■■■ To state a claim under section 1985, a plaintiff must do more than merely allege the existence of a conspiracy in conclusory fashion. *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1126 (10th Cir.1994). "Section 1985 conspiracy claims must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Langley v. Adams County,* 987 F.2d 1473, 1481 (10th Cir.1993) (quoting *Crabtree ex rel. Crabtree v. Muchmore,* 904 F.2d 1475, 1481 (10th Cir.1990) (appendix)). The factual allegations may be either direct or circumstantial. *Brever,* 40 F.3d at 1126 (citation omitted). Even if the plaintiff has no basis on which to allege that the purported conspirators communicated with each other, the plaintiff's claims can withstand a motion to dismiss if the facts alleged "give rise to the inference that defendants conspired." *Id.* at 1127 (citation and internal quotation marks omitted). The complaint must at least create the inference of a "meeting of the minds." *Id.*

■■■ Viewed in the light most favorable to the plaintiff, the court believes the complaint here states a claim against Officer Stovall under section 1985. Plaintiff alleges the following:

the Overland Park police instructed [me] to wait outside on the Don Stein car lot area while other responding police officers went inside the main showroom to talk with the Don Stein defendants. The police conferred for some time with the Don Stein [D]efendants out of [my] presence and hearing ... while [I] waited outside for the officers to return. This act connotes opportunity for the Overland Park police to conspire....

Once the police had reemerged from the Don Stein main showroom, and [I] was in the midst of writing [my] account of the assault, Defendant Stovall interrupted [me] three or four times....

Once [I] finished [my] written statement and was assured by Defendant Stovall that no further information was needed [and] that [my] copy of the statement could be picked up on October 14, [I] was then told that [I] was free to leave and that [D]efendant Stovall would pursue the claim from that point on.

These allegations, combined with the allegations (1) that plaintiff was unable to obtain a copy of her statement until almost two and one half months after October 14, (2) that Officer Stovall did not adequately pursue plaintiff's claim, and (3) that Officer Stovall did not even bother to ask plaintiff to identify her assailants, narrowly create the inference that Officer Stovall had the requisite "meeting of the minds" with the Don Stein Defendants. Officer Stovall arrived at the scene of plaintiff's alleged racially motivated assault, spoke privately with plaintiff's alleged assailants, and allegedly emerged with a hostility toward plaintiff's claims.[7] The officer allegedly acted in concert with the Don Stein Defendants to delay or impede plaintiff's claim. Although Officer Stovall may be able ultimately to prevail in a subsequent motion for summary judgment, the court does not believe it is appropriate, as a matter of law, to dismiss plaintiff's complaint at this stage

---

7. The Overland Park Defendants argue that plaintiff's complaint must be dismissed because it does not specify that Officer Stovall actually entered the Don Stein showroom to speak with the Don Stein Defendants; it states only that *"The Overland Park [P]olice* instructed [me] to wait outside ... while *other* responding police officers went inside." (emphasis added). The court rejects this argument. Plaintiff's reference to the "other" responding police who went inside does not seem to foreclose the possibility that Officer Stovall was one of these "other" police. The court must resolve all doubts in favor of the plaintiff at the motion to dismiss stage. *See Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir. 1996).

of the proceedings. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (dismissal inappropriate unless it appears beyond a doubt that plaintiff can prove no set of facts that would allow him or her to recover).

 The court believes plaintiff's complaint falls just short of stating a section 1985 claim against the unnamed desk clerk because the complaint does not allege facts sufficient to create an inference that the clerk conspired with anyone. Plaintiff asks the court to infer a meeting of the minds between the desk clerk and Officer Stovall merely because the two work in the same police department. This the court is unwilling to do. *See Langley v. Adams County,* 987 F.2d 1473, 1482 (10th Cir.1993) (mere employment by same employer does not create sufficient inference of agreement). Although the desk clerk's actions might be interpreted to be consistent with Officer Stovall's alleged conspiracy, there are too many alternative explanations to raise the requisite inference that Officer Stovall and the desk clerk agreed to deprive plaintiff of her rights. Accordingly, the Overland Park Defendants' motion to dismiss plaintiff's section 1985 claim against the unnamed desk clerk is granted.

 The Overland Park Defendants also contend that Officer Stovall is entitled to qualified immunity from plaintiff's section 1985 claim. Conspiring to deprive a plaintiff of equal protection of the laws because of his or her race, however, has long been a clearly established violation of federal law. *See, e.g., Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir. 1994). Accordingly, this motion is denied in relevant part.

### E. Section 1986 Claims

 42 U.S.C. § 1986 provides a remedy for plaintiffs against those who have knowledge of a section 1985 conspiracy, the ability to aid in its prevention, and who fail to exercise that ability. *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1124 n. 5 (10th Cir.1994). The Overland Park Defendants move to dismiss plaintiff's section 1986 claims against them.

 The court grants the Overland Park Defendants' motion to dismiss as to Chief Douglass, Mayor Eilert, and the City of Overland Park because plaintiff has not alleged these defendants had knowledge of any conspiracy. *See id.* The court grants the Overland Park Defendants' motion to dismiss as to the unnamed desk clerk because plaintiff has not alleged the clerk had an ability to aid in preventing the alleged conspiracy. *See id.*

The court denies the Overland Park Defendants' motion to dismiss as to Officer Stovall because plaintiff alleged that Officer Stovall took part in a section 1985 conspiracy. Such an allegation precludes a motion to dismiss. *See Wesley v. Don Stein Buick, Inc.,* 985 F.Supp. 1288, 1299–1300 (D.Kan.1997) (section 1986 claim lies against defendants who take part in a section 1985 conspiracy).

 The court also rejects the Overland Park Defendant's claim that Officer Stovall has qualified immunity from plaintiff's section 1986 suit. It has long been clearly established law that state officials may not take part in conspiracies to deprive people of their civil rights. *See, e.g., Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994).

### III. Motion for Summary Judgment

### A. Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th

Cir.1994) (citing *Anderson*, 477 U.S. at 249–50). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## B. Discussion

Plaintiff's complaint alleges that AIMI is vicariously liable for the state law torts and section 1981 violations of Don Stein and its employees. AIMI moves for summary judgment, claiming that plaintiff can demonstrate no genuine issue of material fact concerning AIMI's relationship with Don Stein that would require it to be liable for Don Stein's tortious acts.

 Plaintiff asks the court to stay AIMI's motion and allow her time to discover information concerning the relationship between AIMI and Don Stein. Plaintiff's request for a stay amounts to a motion under Fed.R.Civ.P. 56(f):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Whether to grant a Rule 56(f) motion is in the trial court's discretion. *See Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553–54 (10th Cir.1993). A party seeking such relief must state with specificity how the additional time would enable it to obtain enough information to oppose the motion for summary judgment. *See id.* at 1554.

 The court concludes that plaintiff has not made a sufficient showing to merit Rule 56(f) relief. Her papers do not explain how additional time might assist her in obtaining information sufficient to oppose AIMI's motion for summary judgment. She

does not explain what, if any, information she has been unable to obtain.[8] Mere conclusory assertions that additional discovery is necessary are insufficient for purposes of Rule 56(f). *See Jensen*, 998 F.2d at 1554. Accordingly, plaintiff's Rule 56(f) motion is denied.

 In Kansas, the touchstone for determining whether a purported principal is vicariously liable for the acts of another is whether the purported principal had the right to control the actions of the other. *Major By and Through Major v. Castlegate, Inc.*, 23 Kan.App.2d 694, 696–97, 935 P.2d 225 (1997). The rule under section 1981 is substantially the same. *Cf. General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The existence of a manufacturer/distributor relationship is insufficient, by itself, to establish the requisite control. *See Hendrix v. Phillips Petroleum Co.*, 203 Kan. 140, 155–56, 453 P.2d 486 (1969); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 387, 710 P.2d 1297 (1985); *cf. Aguirre v. McCaw RCC Communications, Inc.*, 953 F.Supp. 1222, 1226–28 (D.Kan.1997) (plaintiff could not establish that cellular service provider had the requisite power to control its distributor in a Title VII action).

 AIMI contends it is entitled to summary judgment because there is no genuine issue of fact concerning whether it had a right to control Don Stein. The court agrees. The affidavit of Ralph Summers, an AIMI representative, states that "[a]t no time has anyone on behalf of AIMI ever directed, requested or otherwise asserted control over the specific conduct or actions of any ... individual employed by Don Stein." The affidavit of Jerry Kaplan, Don Stein's President, states that "[a]t no time has anyone on behalf of AIMI ever directed or attempted to assert control over the specific conduct or actions of any ... individual employed by Don Stein." The Sales and Service Agreement between AIMI and Don Stein provides:

**8.** AIMI attached several affidavits and its dealership agreement with Don Stein to its summary judgment motion.

This Agreement ... contemplates that ... [Don Stein] shall fulfill its responsibilities and obligations ... in conformity with the provisions hereof, but otherwise at the discretion of [Don Stein.] Nothing herein contained shall impose any liability on [AIMI] in connection with the establishment or conduct of [Don Stein's] facilities or operations and [Don Stein] shall be solely responsible for any and all ... liabilities ... incurred by [Don Stein] ... in the performance of [Don Stein's] responsibilities.

Don Stein purchases its inventory directly from AIMI and Don Stein independently sets its retail prices through the bargaining process with its customers. Plaintiff has not controverted any of this evidence. Accordingly, AIMI is entitled to summary judgment. *See Arnson v. General Motors Corp.*, 377 F.Supp. 209, 213 (N.D.Ohio 1974) (car manufacturer who owned no stock in dealership, did not share profits with dealership, did not employ workers at dealership, and had no control over retail prices at dealership did not have sufficient control over dealership's sales operation to warrant finding of vicarious liability for dealership's torts).

### IV. Motion to Amend

██ Pursuant to Fed.R.Civ.P. 59(e), former defendants Moneca Mills and the United States Postal Service move the court to amend its prior memorandum and order granting them summary judgment. *See Wesley v. Don Stein Buick, Inc.*, 985 F.Supp. 1288, 1303–1305 (D.Kan.1997). Specifically, these defendants object to the court's characterizations of Inspector Mills' actions as "unlawful," "clearly unlawful," and "a misinterpretation of the letter of the relevant postal regulations." *Id.* at 1305. The court made these characterizations when evaluating a squarely presented and hotly contested issue: whether Inspector Mills' conduct in providing plaintiff's address to the Federal Bureau of Investigation was sufficiently unlawful to violate the Privacy Act. *Id.* at 1304–05. Of course, the court was obligated at the summary judgment stage to view Inspector Mills' conduct in the light most favorable to the plaintiff. *See id.* at 1301 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Thus, as the context of the court's order makes clear, the court did not hold that Inspector Mills' *actual conduct* was clearly unlawful; the court held only that plaintiff's evidence, if believed, was sufficient to support a finding that Inspector Mills' conduct was clearly unlawful. *Wesley*, 985 F.Supp. at 1305. The court further held that Inspector Mills' alleged conduct, although unlawful, was not sufficiently "intentional or willful" to support plaintiff's claim under the Privacy Act. *Id.* at 1303, 1305 (citing *Andrews v. Veterans Administration*, 838 F.2d 418, 421–22 (10th Cir.1988)).

Principles of judicial restraint persuade the court that these defendants are entitled to some relief because the court's finding that Inspector Mills' alleged conduct was unlawful was not necessary to the court's grant of summary judgment. Without deciding one way or another whether Inspector Mills' alleged conduct was "unlawful," "clearly unlawful," or "a misinterpretation of the letter of the relevant postal regulations," the court vacates the portions of its order that so held or implied. Whether or not Inspector Mills' alleged conduct in releasing information off of plaintiff's postal registration card was unlawful, summary judgment was warranted because the conduct clearly was not "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *See Wesley*, 985 F.Supp. at 1305. Even giving plaintiff the inferences to which she is entitled, no reasonable jury could find that Inspector Mills' alleged activity was "committed without grounds for believing it to be lawful." *Id.* These defendants' motion to amend is granted to the limited extent noted herein.

### V. Motion for Costs

██ Pursuant to Fed.R.Civ.P. 4(d)(5), plaintiff moves the court to order AIMI to pay the costs associated with effecting service of process. Plaintiff alleges she is entitled to reimbursement of her costs because AIMI refused to waive service of summons as contemplated by Fed.R.Civ.P. 4(d)(2). According to plaintiff, plaintiff first attempted to effect service on AIMI on June 6, 1997 by mailing a request to waive service to CT

Corporation System ("CT"), AIMI's registered agent for service of process, pursuant to Fed.R.Civ.P. 4(d)(2). Due to an administrative mixup, CT denied its status as registered agent and returned plaintiff's documents. Plaintiff verified CT's status as AIMI's registered agent and again mailed CT a request for AIMI to waive service.

AIMI claims that plaintiff's motion should be denied because plaintiff did not comply with the formalities of Fed.R.Civ.P. 4(d)(2). Specifically, AIMI claims that although CT received a copy of plaintiff's complaint, CT did not receive a request for AIMI to waive service as contemplated by Fed.R.Civ.P. 4(d)(2). AIMI also claims that plaintiff's motion should be denied because plaintiff did not incur any additional or unnecessary costs in effecting formal service.

The court denies plaintiff's motion because plaintiff offers no evidence of the costs she incurred in effecting formal service. Furthermore, there is no evidence in the court file that plaintiff has ever formally served AIMI. Fed.R.Civ.P. 4(d)(5) allows the court to assess "the costs subsequently incurred in effecting service under [formal methods of serving process]" when a defendant refuses a request to waive such service. Because nothing in the court file [9] and nothing on the face of plaintiff's motion papers indicate that AIMI has ever been served pursuant to one of these more formal methods, the court denies plaintiff's motion for costs.[10]

## VI. Motion to Strike

GM moves to strike plaintiff's October 24, 1997 second amended complaint as untimely (Doc. 89). The court denies GM's motion because it is moot; the court has already stricken plaintiff's October 24, 1997 second amended complaint. *See Wesley v. Don*

**9.** Plaintiff filed a copy of AIMI's summons with the court along with evidence she mailed such summons to AIMI (Doc. 49). Nothing on the face of the summons nor elsewhere in the court file, however, indicates that AIMI has been formally served with process pursuant to the Federal Rules of Civil Procedure.

**10.** AIMI voluntarily entered its general appearance in this case on August, 25, 1997 (Doc. 53). Any attempt to serve AIMI formally after that date was unnecessary. *See Federal Deposit Ins.*

*Stein Buick, Inc.*, 985 F.Supp. 1288, 1293 n. 1 (D.Kan.1997).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motion to dismiss on qualified immunity grounds of defendants T.A. Stovall, John M. Douglass, Ed Eilert, and the unnamed desk clerk of the Overland Park, Kansas, Police Department (Doc. 65) is granted in part and denied in part as follows: (1) plaintiff's section 1981 claims against Chief Douglass and Mayor Eilert are dismissed; (2) in all other respects, this motion is denied.

**IT IS FURTHER ORDERED THAT** the motion to dismiss of defendants T.A. Stovall, one unnamed desk clerk of the Overland Park, Kansas Police Department, John M. Douglass, and Ed Eilert (Doc. 103) is granted in part and denied in part as follows: (1) plaintiff's section 1985 and 1986 claims against the unnamed desk clerk are dismissed; (2) plaintiff's section 1986 claims against Chief Douglass, Mayor Eilert, and the City of Overland Park are dismissed; (3) in all other respects, this motion is denied.

**IT IS FURTHER ORDERED THAT** the motion for summary judgment of defendant American Isuzu Motors, Inc. (Doc. 109) is granted.

**IT IS FURTHER ORDERED THAT** the motion of former defendants Moneca Mills and the United States Postal Service (Doc. 100) is granted in part. The court vacates the portion of its November 20, 1997 order (Doc. 95) that held or implied that Inspector Mills' conduct was "unlawful," "clearly unlawful," or "a misinterpretation of the letter of the relevant postal regulations."

**IT IS FURTHER ORDERED THAT** the motion of plaintiff for imposition of costs (Doc. 79) is denied.

*Corp. v. Oaklawn Apartments,* 959 F.2d 170, 176 (10th Cir.1992) ("defendant may [not] halfway appear in a case, giving ... the impression that he [or she] has been served, and [later] pull failure of service out of the hat like a rabbit.") (quoting *Broadcast Music, Inc. v. MTS Enters., Inc.,* 811 F.2d 278, 281 (5th Cir.1987)); *Ziegler v. Akin,* 261 F.2d 88, 92 (10th Cir.1958) (holding that voluntary appearance cures any defect in service); *see also* Fed.R.Civ.P. 12(h)(1).

**IT IS FURTHER ORDERED THAT** plaintiff's section 1983 conspiracy claims are dismissed pursuant to the court's November 20, 1997 order (Doc. 95).

**IT IS SO ORDERED.**