Linda P. Jeffrey Topeka City Attorney 215 S.E. 7th Street, Room 353 Topeka, Kansas 66603
Dear Ms. Jeffrey:
You inquire whether the City of Topeka would be liable for the tortious conduct of the Topeka Housing Authority by virtue of the Municipal Housing Law.[1]
The Municipal Housing Law (Housing Law) authorizes a municipality[2]
to own and operate housing projects for low-income individuals and senior citizens.[3] To effectuate this purpose, the Housing Law authorizes a municipality to issue revenue bonds,[4] borrow money from the federal government,[5] and acquire real property by eminent domain.[6]
If a city is not desirous of exercising these prerogatives, the Housing Law allows a municipality to "create an agency of such municipality" to be known as "the housing authority of the municipality:"
 "[The] municipality may delegate to such authority any or all of the powers conferred on the municipality by this act, and may authorize it [i.e. the authority] to employ an executive director . . . and such other officers, agents and employees . . . as it may require, and to delegate to one or more of its agents or employees such powers or duties as the authority may deem proper."[7]
The powers delegated by a municipality to a housing authority vest in five commissioners who are appointed by the mayor or the board of county commissioners, as the case may be.[8]
In November, 2000, the Topeka City Council enacted a resolution creating the Topeka Housing Authority (Authority) pursuant to the Municipal Housing Law. The Council delegated to the Authority the City's power to own and operate housing projects, including the power to delegate to the Authority's agents and employees "such powers or duties as the [Authority] may deem proper."[9] Additionally, the Council delegated all of the specific powers listed in the Housing Law, except the power to issue revenue bonds and to use eminent domain in acquiring real property.
While the Resolution mirrors most of the verbiage of the Housing Law, the Resolution does not recite that the Housing Authority is an agent of the City of Topeka, as does K.S.A. 17-2340. This omission, however, does not necessarily result in the Authority not being the City's agent. K.S.A17-2365 provides that the provisions of the Housing Law "shall be controlling, notwithstanding anything to the contrary contained in any . . . local ordinance." Therefore, in the absence of a charter ordinance, the Topeka Housing Authority is an agent of the City of Topeka.[10]
Agency is a comprehensive term embracing a limitless number of relations between two or more persons or entities by which one party, the agent, is authorized to do certain acts for the other party, the principal.[11] While the relationship may be created by the parties, it may also be created by law.[12] This appears to be the case with municipal housing authorities created pursuant to the Housing Law. However, the fact that a housing authority is denominated in a statute as an agency of its municipality does not necessarily mean that a municipality will be liable, under the doctrine of respondeat superior, for the tortious conduct of its housing authority.[13]
In Hurla v. Capper Publications,[14] the plaintiff sued Capper Publications on a respondeat superior theory after he was injured in an automobile accident with John Lane, a distributor of Capper's newspapers. The Court disagreed with plaintiff's theory that Capper's liability was founded on the principal-agent relationship:
 "Appellant asserts that `the evidence . . . clearly establishes a prima facie case of principal and agent between Lane and . . . Capper Publications.' In other words, the theory of appellant appears to be that if an agency is established, liability is established. In this view, we cannot concur. Conceding for the moment that the meager testimony adduced is sufficient to establish a . . . case of principal and agent, it does not follow that defendants are liable in this action. It is necessary to establish that particular species of agency known in the law as master and servant. It is necessary to show . . . that . . . Capper Publications controlled or had a right to control the physical conduct of Lane in the performance of the service required by the employment."[15]
The Kansas Supreme Court reaffirmed the Hurla conclusion in an action against the Catholic Diocese of Wichita as a result of an automobile collision between plaintiffs and a parish priest. The Court concluded that the doctrine of respondeat superior, or imputed negligence, applies only when a principal has control or the right to control its agent.[16]
Finally, in an action against an automobile owner for the negligence of the auction company retained by the owner, the Court concluded that, while Salina Auto Auction was acting as the automobile owner's agent in attempting to sell the automobile, the owner was not liable, under an imputed negligence theory, for the negligence of his agent:
 "Under Kansas law, a principal's liability for his agent's negligence is determined by asking whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. (Citations omitted). The primary factor to be considered is the control which the principal had over the agent. [If] the principal had no right to direct and control the agent at the time in question, the principal is not vicariously liable to third parties for the agent's negligence."[17]
Resolution No. 7104 authorizes the Topeka Housing Authority to do the following:
1. Determine housing needs in the community;
2. Manage housing complexes and establish rental rates;
3. Lease dwellings;
 4. Own, sell, hold, lease or improve real or personal property;
5. Insure property;
 6. Pay expenses incident to owning and operating housing complexes;
7. Borrow funds;
8. Hire and terminate employees; and
9. Enter into contracts, mortgages, trusts, and leases.
The only apparent City involvement is the Mayor's appointment of five individuals who serve for four year terms as the Authority's governing body and who are vested with the powers delegated to the Housing Authority. Members of the Authority's governing body can be removed by the Mayor only for cause.
While there are no Kansas appellate decisions regarding whether a municipality is vicariously liable for the torts of its housing authority, it is our opinion that, based upon the recitations in Resolution No. 7104, the City of Topeka has no control or right to control the actions of the Topeka Housing Authority.[18] Therefore, the City should not be held liable on a theory of respondeat superior for tortious conduct committed by the Topeka Housing Authority.
Concerning a municipal housing authority's tort liability, we note that the Kansas Tort Claims Act[19] makes each "governmental entity" liable for "damages caused by the negligent or wrongful acts of omissions of . . . its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under [State law]."[20] A "governmental entity" includes a "municipality."[21] A "municipality" includes a city and "any agency, authority. . . or other instrumentality thereof."[22] Because the Topeka Housing Authority is "an agency, authority or other instrumentality" of the City of Topeka, it is our opinion that the Housing Authority is a "governmental entity" for purposes of the Kansas Tort Claims Act.[23] Moreover, the Authority can be sued in its own name so a plaintiff seeking damages for any alleged negligence on the part of Authority employees has a remedy for obtaining redress.[24]
You also inquire regarding the City's liability for claims that may arise from the statutory agency relationship between the City and the Housing Authority that do not fall within the parameters of the Kansas Tort Claims Act. Liability in those instances will depend upon the nature of the claim and the applicable law and, therefore, we offer no opinion in this regard.
Finally, you inquire whether the City may exempt itself from the provisions of the Municipal Housing Law that address the agency status of a housing authority.[25]
As you know, Article 12, Section 5 of the Kansas Constitution allows a city to enact a charter ordinance exempting itself from legislative enactments that are not uniformly applicable to all cities.
The Municipal Housing Law, originally enacted in 1957, applied initially only to cities of the first class.[26] In 1973, the law was amended to include any "municipality," defined as "any city or county."[27] In 1975, K.S.A. 17-2341, which addresses the appointment of Authority commissioners, was amended to include different terms of office for commissioners in cities with a population of more than 250,000.[28] Consequently, pursuant to the holding in City of JunctionCity v. Griffin,[29] it is our opinion that the Municipal Housing Law is not an enactment uniformly applicable to all cities and, therefore, a city may exempt itself from the Housing Law's provisions in accordance with the Kansas Constitution.
Summarizing, the Topeka Housing Authority is the agent of the City of Topeka pursuant to the Municipal Housing Law. However, because the City has no control or right to control the actions of the Topeka Housing Authority, the City should not be held liable on a theory of respondeatsuperior for tortious conduct committed by the Topeka Housing Authority. Pursuant to the Kansas Tort Claims Act, the Topeka Housing Authority is liable for the negligence of its employees while acting within the scope of their employment under circumstances where the Topeka Housing Authority, if a private person, would be liable under State law. Finally, the Municipal Housing Law is not an enactment uniformly applicable to all cities and, therefore, a city may exempt itself from its provisions in accordance with the Kansas Constitution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 17-2337 et seq.
[2] Municipality can be a city or county. K.S.A. 17-2339.
[3] K.S.A. 17-2345.
[4] K.S.A. 17-2351.
[5] K.S.A. 17-2357.
[6] K.S.A. 17-2361.
[7] K.S.A. 17-2340.
[8] K.S.A. 17-2341.
[9] City of Topeka Resolution No. 7104.
[10] See Bell v. Kansas City, Kansas Housing Authority, 268 Kan. 208,210 (1999) (Kansas City, Kansas Housing Authority is an agency of the City of Kansas City, Kansas and a "municipality" for purposes of K.S.A.12-105b [notice of claim under Kansas Tort Claims Act must be filed with "municipality."]); Wiggans v. Housing Authority of Kansas City, Kansas,22 Kan. App. 2d 367, 369 (1996) (Housing Authority of Kansas City, Kansas is a municipal corporation and an agency of the City of Kansas City, Kansas).
[11] In Re Tax Appeal of Scholastic Book Clubs, Inc., 260 Kan. 528
(1996).
[12] Id. at 540. See K.S.A. 22-2807 (clerk of district court is agent for bond obligors for purpose of accepting service of papers affecting obligor's liability); K.S.A. 10-501 (State Treasurer is fiscal agent for the State); K.S.A. 40-777 (Insurance Commissioner is agent of fraternal benefit societies for the purpose of service of process); K.S.A. 58-3040
(Director of Real Estate Commission is agent for purposes of accepting legal notices on nonresident licensees); K.S.A. 82a-706e (Water Commissioner is agent of Chief Engineer in supervising water distribution); Board of County Comm'rs of Osborne County v. City ofOsborne, 104 Kan. 671 (1919) (counties are agencies of the State created to aid and administer state government).
[13] Hurla v. Capper Publications, 149 Kan. 369 (1939). See McDonnellv. The Music Stand, 20 Kan. App. 2d 287 (1994) (the fact that a contract between a debt collector and the defendant identified the debt collector as the defendant's agent did not impose vicarious liability on the defendant in an action for outrageous conduct). See, also, McQuillan Mun Corp § 53.71 (3rd Ed).
[14] 149 Kan. 369.
[15] 149 Kan. at 376.
[16] Brillhart v. Scheier, 243 Kan. 591 (1988).
[17] Huenink v. Rice, 859 F. Supp. 1398, 1405 (D.Kan. 1994). SeeWesley v. Don Stein Buick, Inc., 996 F. Supp. 1299 (D.Kan. 1998) (existence of a principal-agent relationship, alone, is insufficient to impose liability on principal). See, also, Waldon v. Housing Authority ofPaducah, 854 S.W.2d 777 (Ky. 1993); Gordon v. Bridgeport HousingAuthority, 544 A.2d 1185 (Conn. 1988) (city not vicariously liable for negligence of housing authority because latter is separate and independent).
[18] But see, Barajas v. Unified Government of Wyandotte County,87 F. Supp.2d 1201 (D.Kan. 2000) (in determining whether housing authority is separate and independent from Unified Government for purposes of Fair Labor Standards Act, extent to which Unified Government controls housing authority's budget is relevant).
[19] K.S.A. 75-6101 et seq.
[20] K.S.A. 2000 Supp. 75-6103.
[21] K.S.A. 2000 Supp. 75-6102(c).
[22] K.S.A. 2000 Supp. 75-6102(b).
[23] See Allen v. City of Kansas City, Kansas, 660 F. Supp. 489
(D.Kan. 1987) (discussion of whether certain immunity provisions in the Kansas Tort Claims Act applied to Kansas City, Kansas Housing Authority).
[24] K.S.A. 17-2340.
[25] K.S.A. 17-2339(a); K.S.A. 17-2340.
[26] L. 1957, Ch. 132, §§ 3, 4.
[27] L. 1973, Ch. 96, §§ 1, 2.
[28] L. 1975, Ch. 138, § 1.
[29] 227 Kan. 332 (1980) (a city may charter out of the Code of Procedure for Municipal Courts because the Code is a nonuniform enactment by virtue of a provision providing different treatment for cities of the first class).